PLAIN CITY IRR. CO. v. HOOPER IRR. CO. et al.
JEREMY v. RASMUSSEN et al.

No. 5580.   Decided December 5, 1935.   (51 P. [2d] 1069.)

546

*Wm. A. Hilton,* of Salt Lake City, for appellants.

*P. G. Ellis,* of Salt Lake City, for respondent.

MOFFAT, Justice.

In 1921 an action was brought by the plaintiff, Plain City Irrigation Company, against the defendant Hooper Irrigation Company to ascertain and determine the respective rights, priorities, and uses of water between the original named parties. While it does not appear that the state engineer had either begun or completed a survey of the Weber river system as the suggested procedure is outlined by section 21, c. 67, Laws of Utah 1919, it does appear that by stipulation of the original parties and upon an order of the court, the state engineer was directed to take proof and report a proposed determination of the rights and priorities of the water of the Weber river system, including its tributaries, pursuant to a procedure outlined by section 22, c. 67, Laws of Utah 1919, and other sections of the same chapter relating thereto.

The matter involved in this appeal relates to two or three small tributaries of East Canyon creek which latter is tributary directly to the Weber river. The issues on this appeal are limited to the rights to the use of the water of these tributaries.

Ethan J. Jeremy, Jens P. K. Rasmussen, Christine Rasmussen, and James R. Rasmussen each subscribed a statement of claim as provided by the statute, which are found on file herein. Jens P. K. Rasmussen and Christine Rasmussen both died after the original action was begun. James R. Rasmussen is the administrator of both estates. The area involved in the dispute herein is a restricted and isolated district remote from other users and claimants of water rights, and, in so far as the records disclose, no other parties contend for any claims or interests in the particular streams except as such rights are subject to the rights here sought to be determined and then only as the unused waters thereof may be tributary to the river system.

The notice of appeal refers to one Osmond Rasmussen, but nowhere else does he appear as a party to the proceeding, neither originally nor as having filed a statement of claim. It also refers to James R. Rasmussen; but James R. Rasmussen, although he filed a statement of claim, has not personally protested the proposed determination. No one's rights may be determined upon the present appeal except those who are parties to the action and made parties to the appeal and have rights adversely affected thereby, and no one's rights, except those of Ethan J. Jeremy and the estates of Jens P. K. Rasmussen and Christine Rasmussen, of which James P. Rasmussen is the administrator, and appellant, who appear to be the only parties to the record on appeal, may be held to be bound by the judgment. They are parties hereto and are bound as between themselves.

Appellant assigns error because the court refused to make the state of Utah a party. By a previous order and the published notice, the state of Utah was made a party. The trial court so indicated and refused to make a further order on the matter. It was not error to do so. In this proceeding the state is not an adverse party. Although the last sentence of section 38, c. 67, Laws of Utah 1919, provides, "In any action for the determination

of water rights the State of Utah shall be joined as a necessary party," such provision does not make the state in its governmental capacity a necessary party. Were the state claiming a proprietary right to the use of water as an appropriator or user, the situation would be a different one. The state is interested in the unappropriated waters of the state, but not the appropriated waters beneficially applied and economically used; that is, used without waste. In the case of *Huntsville Irr. Ass'n* v. *District Court of Weber County,* 72 Utah 431, at page 439, 270 P. 1090, 1093, this court said:

"Inasmuch as the state is vitally interested in conserving the unappropriated waters of the state in order that such waters may be definitely known and subjected to the supervision and control of the state engineer, it is reasonable to suppose that the purpose of making the state a party was to safeguard the rights of the state to such unappropriated waters and provide means whereby the state might have the opportunity to see that water users in their claims were restricted to a beneficial use of the water. The fact that the statute requires that the state should be a patry is hardly sufficient to justify the conclusion that, therefore, the purpose of the statute was to provide a procedure solely for the purpose of determining the rights of claimants as against the state. Not only does the statute fail in any of its provisions to convey that impression, but there are many reasons against it. It can hardly be presumed that the Legislature would deliberately enact a law that would involve the agricultural communities of the state without their consent in expensive and long protracted litigation for the sole purpose of determining whether or not there was any unappropriated water. If such was the purpose, then the statute was enacted solely for the benefit of the state as an entity and in no sense for the benefit of the water users themselves. Such a presumption finds little or no support in any provision of the statute."

At the beginning of the hearing and before the taking of testimony, appellant made a motion that notice be given to all parties claiming water rights, presumptively all claiming rights on the river system, of the hearing. This motion was denied and error assigned. It may readily be seen that if any such matter was before the court as would, or possibly might, affect the rights of others, that

such an order should be made. The issues before the court related to the dates of priorities as between the parties then before the court, the matter of amendments as to locations, etc., and quantities of land and water. No matter what the decision might be as between the parties here involved, no diminishing of the contributing supply to the river system affecting others was involved, the total flow of the tributary streams being claimed and not questioned. No other parties were interested. Notwithstanding such situation, appellant maintains that notice should have been given "to all claimants." The question is, What was intended by section 34, c. 67, Laws of Utah 1919, said chapter being the one under which the original proceeding was instituted? Section 34 provides:

"If any contest or objection on the part of any claimant or claimants shall have been filed, as in this Act provided, the court shall give not less than fifteen days' notice to *all claimants*, stating when and where testimony will be taken, provided that such testimony shall be taken in the county in which said action is pending. The court may grant adjournments from time to time as occasion may require." (Italics added.)

The statute was designed to bring about an expeditious and economical adjudication of water rights where a large number of users from a given river system were involved. Whenever one's rights are or may be affected or drawn into question, the owner or claimant of such right is entitled to notice and has the right to be heard before he may be bound by a judgment affecting his rights. Ordinarily, the law does not require the doing of a useless or futile thing. It would seem that a contest between A and B upon the headwaters of Chalk creek, a tributary to the Weber river, as to the date of priority, quantity, or place of use, could not affect any right sought to be litigated between C and D who were users of water upon the sources of East Canyon creek, another tributary, or any other right above the confluence of either with the Weber river proper. Each of the tributaries drain different and unrelated watersheds

in so far as the tributaries themselves are concerned. Should the contest between either A and B or C and D affect the flow or draw in question the relative priorities or other rights affecting appropriators or users of the Weber river system as a whole, then under the statute not less than fifteen days' notice must be given *"to all claimants"* whose rights might be affected. We think the intent of the statute is to require notice to all adverse claimants, or all claimants whose rights would be affected or drawn in question. It would also seem that if a claimant or claimants have objections or their rights could be affected adversely, such claimant or claimants are entitled to notice as required by the statute, otherwise such claimant or claimants would not be bound by the judgment. It may further be observed that such notice is required for the benefit and protection of adverse claimants. Appellant has not here shown that the right of any other claimant is drawn in question, nor in what way, if at all, the rights for which appellant contends are affected by failure to give notice or how he could be prejudiced. Without a showing of prejudice, such error, if it be error, would not affect appellant nor furnish a ground for complaint. In the instant case the assignment is without merit. *Smith* v. *District Court, etc.,* 69 Utah 493, 256 P. 539; *Huntsville Irr. Ass'n* v. *District Court of Weber County,* supra. In these cases the statute is analyzed and applied. The decision in the Huntsville Case reached a different conclusion for different reasons than are presented in the instant case. The principles laid down are the same and support the conclusion reached herein.

It would further appear from the provisions of sections 33, 34, and 35 of chapter 67, Laws of Utah 1919, here under consideration, that no final judgment has yet been entered, nor that one is contemplated until such questions as arise out of "any contest or objection on the part of any claimant or claimants" to the proposed determination directed to be submitted to the court by the state engineer shall have been disposed of and determined.

Section 22 of said chapter 67 provides:

"Upon the filing of any suit for the determination of water rights, the clerk of the district court shall notify the State Engineer that such suit has been filed. Whereupon the State Engineer shall, as expeditiously as possible, prepare and file with the court a statement giving the names and addresses of all the claimants to the use of water from the river system or water source involved in such action, so far as the said claimants are known; and to this end the clerk of said court shall publish, once a week for two consecutive weeks in a newspaper designated by said clerk as most likely to give notice to such claimants, a notice setting forth that such a petition has been filed, naming or describing the river system or water source involved and requiring claimants to the use of water therefrom to notify the State Engineer of their names and addresses for the purposes hereinafter set forth."

The notice provided for by the part of section 22 above quoted was published and reads:

"Notice

"To Whom It May Concern:

"Notice is hereby given that on the 18th day of January, 1921, a suit was filed in the office of the clerk of the district court for the Second Judicial district of the State of Utah, within and for Weber county, wherein Plain City Irrigation Company, a corporation, is plaintiff, and Hooper Irrigation Company, a corporation, North Ogden Irrigation Company, a corporation, and State of Utah are defendants. That said action was brought for the purpose of determining the rights of the several parties thereto to the use, for irrigation purposes, of certain quantities of waters of the Ogden river and the Weber river.

"All persons claiming the right to use any of the waters involved in the said action are required to notify the state engineer of the State of Utah of their names and addresses for the uses and purposes set out in Section 22 of Chapter 67 of the Session Laws of Utah, 1919.

"Dated, this 10th day of March, 1921.

"Claude T. Moyes,
"Clerk of the District Court of the Second Judicial District, in and for the County of Weber, State of Utah.
"By Mabel Wysong, Deputy Clerk.
[Seal]"

Proof of publication of this notice was filed April 27, 1921. The record discloses that the state engineer filed with the clerk of the court on August 28, 1923, a statement giving the names and addresses of all the claimants to the use of water from the Weber river system as determined by him at that time to be the owners of the right to the use of water and upon that statement the court entered an order making all the parties named parties defendant. Christine Rasmussen is the only one of the parties to this appeal whose name appears in the list of names filed on August 28, 1923.

It is further provided by section 22, supra, as follows:

"When such statement shall have been filed or when the clerk of said court shall have ascertained as nearly as may be the names of all claimants, said clerk shall within fifteen days prepare a notice setting forth the date when the State Engineer will begin the survey of the system or water source and the ditches diverting water therefrom, or the fact that such survey has already been completed, as the case may be, and also giving notice that such claimants must within sixty days of the service of such notice file a written statement with the clerk of said court, setting forth their respective claims to the use of such water. Where such a suit shall have been filed, it shall be the duty of the State Engineer upon receiving notice thereof to examine the records of his office with respect to the water system or water source involved, and if they are incomplete, to make such field investigations as may be necessary for the preparation of the report required by Section 28 hereof."

Section 28 of said chapter 67 then provides:

"Within thirty days after the expiration of the sixty days allowed for filing statements or claims, the State Engineer shall begin to tabulate the facts contained in the statements filed, and to investigate, wherever he shall deem necessary, the facts set forth in said statements, with reference to the surveys already made or by further surveys, and shall, as expeditiously as possible, make a report to the court with his recommendation of how all rights involved shall be determined."

Section 24 of the same chapter provides for the filing of a statement in writing within sixty days after the service of the notice requiring each claimant to file a statement

of his claim, or its claim if an association or corporation, setting forth definitely the name, address, nature of use, quantity, and time used, the stream from which taken, the nature of diverting works, priorities, and such other matters as will define the right. Section 35 of said chapter 67 provides:

"Upon the completion of the hearing, after objections filed, the court shall enter judgment which shall determine and establish the rights of the several claimants to the use of the water of the river system or water source as provided in Section 33 of this Act."

As to some of the proceedings herein, the record submitted is incomplete. No question is raised about them so we do not discuss them. Any one desiring a more complete analysis of chapter 67, supra, as relating to a general adjudication is referred to the Smith Case and the Huntsville Case, supra.

Appellant would be required to serve notice of appeal upon all claimants on the river system if the desire were to bind such claimants by this judgment, which judgment affects only appellant and respondent. To be consistent, if there were merit in the motion requesting all claimants on the river system to be notified of the hearing from which this appeal is taken, if such were the purport of the motion, then by the same token notice of appeal should have been served upon "all claimants."

The court, as to the part of the case before it, found and decreed that the right of appellant to object to the award to Jeremy was barred by the provisions of section 29, c. 67, Laws of Utah 1919. In assigning error as to the finding, appellant says the court erred "in decreeing that the right of objection to the award was barred by the provisions of section 33, chap. 6, Laws of Utah 1929, the decree in such respect being against the law." Appellant must have intended the reference to be to section 29, c. 67, Laws of Utah 1919, as there is no such section as the one referred to.

Why the finding was made by the court or whether the assignment could be construed to reach the finding we need not discuss. The record discloses that a statement of claim of Ethan J. Jeremy was filed in the clerk's office January 23, 1922. Statements of claim were made by Jens P. K. Rasmussen, Christine Rasmussen, and James R. Rasmussen without filing date impressed thereon. Objections to the proposed determination of the state engineer were filed by Jeremy and the Rasmussens on December 31, 1924. All of the objections and protests appear to have been filed at the same time and have an equal standing.

It is not made to appear when the statements of claim were filed with the clerk of the court or if filed with the state engineer when he filed the Rasmussen statements with the clerk of the court, unless the one filing stamp of the clerk was intended to cover all and that they were filed on the same date. The statements of claim are in the files and appear, except for the absence of a filing mark, to bear the indicia of having been submitted in time. In any event, the protests or objections were timely filed and nothing is made to appear that the statements were not likewise filed. The proposed determination which was filed August 24, 1924, justifies the assumption that the state engineer's proposed determination was based upon the statements referred to or other competent information provided for by the statements and had an ultimate connection with the statements of claim found in the record, and that the protests of the Rasmussens filed December 31, 1924, had as good standing as protests, nothing appearing to the contrary, as did the Jeremy protest.

In so far as anything could be accomplished by the filing of a protest, the parties to this proceeding were given the full benefit thereof. It does not appear that either party was limited in presentation of proof. The record discloses a presentation of what would appear to be all that any of the parties desired to offer. The issues presented to the court related to objections to the proposed determination

and sought to have the same amended. The findings made by the court are supported by the evidence and amendments made by the court disclose that the evidence submitted was considered by the court. That the court may have found differently than testified to by some witnesses is no different from any other case where the court is required to find upon conflicting evidence. The erroneous finding of a bar against the Rasmussen claims is mere surplusage as the same result must have been reached upon the evidence.

We are of the opinion that the finding that Jens P. K. Rasmussen and Christine Rasmussen are barred was error, but no showing was made that such error prejudiced either of them. As to James Rasmussen personally and E. L. Rasmussen and Osmond Rasmussen, they do not appear to be parties to this proceeding and any findings or decree or judgment as to their rights are not before us for examination or determination.

As to assignments 3, 4, 5, 6, and 7, they are directed to the alleged failure of the court to separately state findings of fact and conclusions of law and that the evidence is insufficient to show appropriations, quantities, beneficial use, priorities, and other particulars, all of which go to questions of the sufficiency of the evidence, and that the judgment is against the law. However, it appears that the trial court had before it all the witnesses, heard them testify, and had the benefit of personal observation and was in better position to weigh conflicting evidence than are we, being limited to the record only. Assignments 9, 10, 11, and 12 attack the sufficiency of the evidence and assert the decree is against the law. These assignments are not well taken.

After setting forth in the findings the dates of priority, the class to which the right belongs, the duty used as a basis as related to each tract of land, the flow in second feet, the season or period of the year for which use is awarded, with the place of diversion and a description of the use, in substantially the same form as the proposed determination filed

by the state engineer, and ordering the correction of errors, the trial court proceeded to say:

"The Court finds from the evidence that the foregoing is a correct statement of the dates, class, acreage, and other particulars of the water from the respective sources of supply. * * *"

The court then finds a beneficial use, determines that the claims of Jens P. K. Rasmussen and Christine Rasmussen are barred, and then determines that:

"It is considered, adjudged, and decreed by the court that the water rights and priorities of right to the use of water from said sources of supply, being part and parcel of the Weber River System *now under adjudication by the court* belonging to the said Ethan J. Jeremy are as above and hereinbefore found, and the same is decreed to him accordingly." (Italics added.)

The findings are of similar import as to the priorities, quantities, etc., with reference to Jens P. K. Rasmussen and Christine Rasmussen, but are subordinated to the rights of Ethan J. Jeremy. The language is:

"It is considered, ordered, adjudged and decreed by the court that the water rights and priorities to which the heirs, administrators and successors in interest of the said Jens P. K. Rasmussen are entitled, and to which they may assert any claim of right, are described in the foregoing findings, and not otherwise. It is further decreed that the findings and award made by the State Engineer in his proposed determination on pages 98 and 99 aforesaid are hereby corrected to conform thereto. So much thereof as are in excess of the findings and awards here made are hereby stricken out and eliminated, and all awards here made are decreed to be junior in time and right to the awards and priorities decreed herein to the said Ethan J. Jeremy."

So that notwithstanding the finding of a bar by the statute of limitations, the court decrees to the parties said to be barred a right to the use of water and amends the decree upon the evidence.

It appears from the foregoing that in so far as any judgment or decree in the main action is concerned, that no decree or judgment has been made or entered therein; but, on the contrary, that it is "now under adjudication by the

court." It further appears that a part of the decree entered in the instant proceeding, and now before the court, consists of amendments to the proposed determination as submitted by the state engineer. Such procedure appears to be contemplated by the statute, sections 33, 34, and 35, Laws of Utah 1919, by which the proceedings here are to be controlled and guided.

By the provisions of section 33, if no contest is filed, the court is directed to render judgment in accordance with the proposed determination. By the provisions of section 34, if any contest or objection is filed, the court is required to give "notice to all claimants" when testimony will be taken upon the subject-matter of the contest and upon behalf of those affected by the contest. By the provisions of section 35, upon the completion of the hearings upon the contests or objections, after the objections which have been filed with the court shall have been determined, the court shall then enter judgment which shall determine and establish the rights of the several claimants to the use of the water of the river system or water source. It is then further provided by section 33 that the judgment which is contemplated to be rendered after the disposition of the contests or objections shall determine and establish the rights of the several claimants to the use of the waters of the river system or water source under adjudication.

It is required that the judgment or decree

"among other things shall set forth the name and postoffice address of the person, corporation or association entitled to the use of the water; the quantity of water in acre-feet or the flow of water in second-feet; the time during which the water is to be used each year; the name of the stream or other source from which the water is diverted; the place on the stream or other source where the water is diverted; the priority date of the right; and such other matters as will fully and completely define the right."

We are of the opinion the findings in the proceeding before the court are sufficient to meet the provisions of the statute. The findings state the date of priority, the duty

of the water awarded, the quantity of land to be irrigated, the flow in second feet, the place of diversion, the period of use, the place of use, the name of the stream or source, and such other matters as would appear to fully comply with the requirements of the statute, upon a final determination.

This appeal has been taken from the judgment rendered by the trial court upon issues made out of the contests or objections, of the parties immediately concerned in those contested items, and objections arising out of them, and the proposed determination submitted by the state engineer. The question suggests itself: Can there be two final judgments, from which separate appeals may be had under the procedure provided for the determination of water rights of a river system under chapter 67, Laws of Utah 1919? It appears that such is the situation. When the proposed determination is submitted, it is built up out of the statements of the water users' claims, the surveys, records, and files and personal examinations by the engineer of the river system or water source involved. Sections 29, 32. The statements filed by the claimants shall take the place of pleadings, and these statements with other information gathered, the maps, records, and reports of the state engineer, or others appointed by the court, shall be competent and prima facie evidence of the facts. Section 30. If there are no contests, judgment may be rendered in accordance with the proposed determination after the required notice.

If contests or objections are filed, the contest or objections between the contestant and contestee or objector and objectee shall be determined after the taking of testimony. The procedure for determination of all the rights of a river system or drainage area is special and relates to the adjudication of water rights of a system as a whole, and is therefore different from the procedure relating to suits between two or more parties in equity under the general rules of the code of civil procedure. It is not unusual

in courts of equity to enter decrees determining the rights of parties as to certain matters and at the same time leave other matters open for further consideration, directions, or orders. Owing to particular circumstances and hardships, the courts have refused to dismiss appeals from some judgments which did not completely dispose of the cases in which they were entered. These judgments determined the particular matters in controversy, and were of such a nature that they could be immediately enforced, and by their enforcement could deprive the party against whom they were rendered of all benefits which he might obtain from an appeal at any subsequent stage of the proceeding. I Freeman on Judgments, § 45.

So far as may now appear, or as appears from the record, the judgment here on appeal may become a part of the final judgment without modification when the proposed determination of which the issues here are a part becomes the final judgment of the court upon the whole river system. Unless it is otherwise attacked by parties not parties to this appeal, there is no reason why this judgment should not be final. In the case of *Huntsville Irr. Ass'n* v. *District Court of Weber County et al.*, 72 Utah 431, 270 P. 1090, 1094, the law was analyzed and applied and, among other things, the court said:

"The statute certainly contemplates that the individual rights of each claimant shall be ascertained and adjudicated. It seems to be incapable of any other construction. It would be impossible to determine and adjudicate the rights of each individual claimant without determining and adjudicating conflicting claims and disputes existing among themselves.

"The statute, as before stated, provides that the claims filed by the claimants shall stand in the place of pleadings and issues may be made thereon. As we interpret that provision, if one claim conflicts with another, there is an issue to be determined. One claimant by claiming too much water may be an adverse party to every other claimant in the system. He may be adverse to only a party. In any event an issue is presented which should be tried by the court by the same rules of evidence and the same orderly procedure as in other

cases. The protests filed by the plaintiffs here in the Plain City Case are claims as well as protests and constitute pleadings within the meaning of the statute. They present an issue to every other claimant in the system who disputes the plaintiffs' claims. The statute provides that pleadings may be amended. Every facility seems to have been provided for a thorough adjudication of the rights of each claimant as against every other claimant as well as against the state. There is nothing in any previous decision of this court involving this statute in conflict with these views."

We are of the opinion that upon such a judgment or decree as between objectors or contestants that for the purpose of an examination of the particular issues, no other rights or issues being affected or involved, that such judgment is a final judgment between the particular parties thereto for the purpose of an appeal upon such issues.

There is evidence in the record within the purview of what may be considered by the courts as provided by the statute to support the amendments to the proposed determination and the issues determined by the court as final between the parties to this proceeding.

While some reference is made in the findings and decree to James Rasmussen and to E. L. Rasmussen, we do not find that either of them has filed any objection or protest to the proposed determination. Christine Rasmussen is the only one whose name appears among those listed as defendants by order of the court. James R. Rasmussen filed a statement of claim. Osmond Rasmussen does not appear in any capacity, except his name and that of James R. Rasmussen appear in the notice of appeal. As to the matters determined between Ethan J. Jeremy and James Rasmussen, as administrator of the estates of Jens P. K. Rasmussen and Christine Rasmussen, deceased, the judgment is affirmed. As to any other parties or interests or issues, the judgment is not binding. Respondent is entitled to costs.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring).

I agree that under all the facts of this case both appellant and respondent have had their day in court; that the matter was tried on its merits; and that upon conflicting evidence the findings of the court must stand. I also agree that it would be useless and unmeasurably trammel the proceedings in these localized contests to require notice to be served on all water users on the river system not interested in the particular matters raised by the contest. If any are interested, they should appear as contestants or interveners. If perchance the judgment between parties interested in some local contest is such as affects the rights of other water users who before such judgment could not have known that it would do so, such other users would probably not be bound by such judgment unless they had a duty to take notice that their rights might be affected and intervene before judgment. But we have no such case here. This is a self-contained contest which cannot possibly affect any others than those using the entire tributary flow.

I also agree that a judgment between the parties to a contest of this sort is final as to them for the purpose of appeal. I have no difficulty with the legal aspects of a final adjudication of the whole river as it relates to these intermediate judgments. We have somewhat the same legal situation in the case of reference to a master. Chapter 67, Laws of Utah 1919, in effect provides for a reference to the state engineer just as equity refers matters of fact to a master in chancery for a report and finding on the facts. When the master's report is returned, there is opportunity given to all the parties for a hearing if dissatisfied with his findings. In this case the right to contest and to be heard on the "proposed determination" is statutory. If there are no contests, the court affirms the "proposed determination." Whether the court must do so or may itself make independent investigations or independently initiate hearings need not now be determined. The chancellor may adopt the master's report in

toto or modify it. The report is only advisory. I see no difficulty in the fact that the "proposed determination" stands, like the master's report, as the basis for judicial action and that different parts of that determination may be contested by different parties to the whole adjudication, which, when settled inter sese, becomes final as to them. I realize that in the case of a matter referred in chancery, the parties originally before the court in the petition are there for all purposes, whilst in the contests provided for by chapter 67, supra, only those who contest or should have contested may perhaps be considered as foreclosed. But procedure must be adapted to the exigencies of the case.

Furthermore, in the case of decedents' estates, the court makes an adjudication concerning the administration and the distribution of the estate as a res to be judicially acted upon awaiting the result of contests between heirs or creditors and the representative of the estate pending in the same or other courts. Those side contests to settle particular phases arising out of the handling of the whole res are final as to the parties to them and the court having jurisdiction of the probate matter includes such determination in its final decree. Likewise the adjudication of a river system as relating to water rights therein is an adjudication concerning a res. Particular phases are settled by side contests between the parties interested in those phases. Parties not interested need not be joined. When the issues concerning the particular phase are determined judicially, they become final as to the parties thereto. And, finally, the overarching decree as to the river—the whole res—includes the findings of the court in those side contests. The procedure set out by chapter 67 is simply an adaptation of well-known procedure. Therefore I concur in the results of the main opinion.