2004 UT 106

In the Matter of the GENERAL DETER-
MINATION OF RIGHTS TO THE USE
OF WATER, Both Surface and Under-
ground, Within the Drainage Area of the
Price River and of the Drainage Area of
the Green River from the Confluence of
the Price and Green Rivers to the Con-
fluence of the Green and Colorado Riv-
ers Excluding the Drainage Area of the
San Raphael River in Utah.

Green River Canal Company, Appellee,

v.

Jerry D. Olds, State Engineer, Appellant.

No. 20030156.

Supreme Court of Utah.

Dec. 21, 2004.

Mark L. Shurtleff, Att'y Gen., Norman K. Johnson, L. Ward Wagstaff, Julie I. Valdes, Asst. Att'ys Gen. Salt Lake City, for Utah State Engineer Jerry D. Olds.

J. Craig Smith, Scott M. Ellsworth, R. Christopher Preston, Salt Lake City, for Green River Canal Company.

DURRANT, Justice:

## INTRODUCTION

¶ 1 State Engineer Jerry D. Olds (the "State Engineer") filed this interlocutory appeal challenging the district court's conclusion that the Green River Canal Company ("GRCC") filed, in 1973, a timely objection to the Proposed Determination of Water Rights in the Price River and Lower Green River Drainage. To determine whether GRCC's 1973 objection was timely, we must decide whether section 73–4–11 of the Utah Code mandates that the state engineer serve proposed determinations of water rights only by regular mail or whether it allows personal service. Additionally, we must determine whether section 73–4–10 allows a district court overseeing a general adjudication of water rights to retroactively extend the time period in which objections can be filed.

¶ 2 In the proceedings below, the district court held that personal service of proposed determinations failed to meet statutory requirements. On the basis of that conclusion, the court imposed an equitable remedy that treated GRCC's 1973 objection as timely. This result made it unnecessary for the court to address GRCC's argument that section 73–4–10 allows for retroactive extensions to the objection time period. We find the district court's analysis unpersuasive and conclude that the state engineer may provide water claimants personal service of proposed determinations without offending section 73–4–11. That conclusion renders GRCC's 1973 objection untimely. However, we conclude that the district court may grant GRCC a retroactive extension if GRCC can show due cause excusing its late objection. Because our conclusion renders the district court's equitable remedy improper, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. GENERAL ADJUDICATION OF WATER RIGHTS IN UTAH

¶ 3 The appeal currently before this court is a relatively small portion of an expansive adjudicative process that is utilized under Utah law when multiple water rights within a given area are disputed. In order to place the issues presented by this appeal in context, we first provide a brief summation of Utah's water rights adjudication process.

■ ¶ 4 "Utah, along with the majority of western states, follows the appropriation doctrine: First in time, first in right for beneficial use is the basis of the acquisition of water rights." *Estate of Steed v. New Escalante Irrigation Co.*, 846 P.2d 1223, 1224 (Utah 1992). "This court has likened 'a drop of water [to] a drop of gold.'" *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 15, 9 P.3d 762 (alteration in original) (quoting *Carbon Canal Co. v. Sanpete Water Users Ass'n*, 19 Utah 2d 6, 425 P.2d 405, 407 (1967)). Because water is so highly valued, disputes

over water rights are inevitable and frequent. Due to the high volume of such disputes and the often technical nature of the process followed to resolve them, Utah law empowers the state engineer to analyze and settle competing water rights claims. *See* Utah Code Ann. §§ 73–4–1 to –24 (1989).[1] However, when a meritorious request for a large scale determination of water rights is made "by five or more or a majority of water users upon any stream or water source," the state engineer is required to initiate a general adjudication in state district court to resolve all competing claims to water use in the area. *Id.* § 73–4–1; *see also id.* § 73–4–18 (allowing district courts to initiate a general adjudication in certain situations).

■ ¶ 5 "[T]he purpose of the general adjudication process is to prevent piecemeal litigation regarding water rights and to provide a permanent record of all such rights by decree." *In re San Rafael River Drainage Area*, 844 P.2d 287, 289 (Utah 1992). General adjudication of water rights is a creature of statute, and title 73, chapter 4 of the Utah Code outlines the procedure the litigation should follow.

¶ 6 When a general adjudication is initiated, the state engineer notifies all known water rights holders and provides public notice of the adjudication by publication. Utah Code Ann. § 73–4–4. After the state engineer provides notice, all individuals and entities are required to submit any water rights claims within the area in question to the state engineer. *Id.* § 73–4–5. Following the submission of water rights claims, the state engineer conducts a hydrographic survey of the water system and evaluates the submitted claims. *Id.* § 73–4–3. When the survey is complete and all of the submitted claims have been evaluated, the state engineer then prepares a proposed determination of water rights for the area. *Id.* § 73–4–11.

¶ 7 Once a proposed determination has been created, section 73–4–11 of the Utah Code provides that a copy of that determination "shall be mailed by regular mail to each

---

1. Because there have been no post–1989 amendments to title 73 that affect our analysis or conclusion in this case, for convenience we cite the 1989 Utah Code throughout this opinion when referring to title 73.

claimant with notice that any claimant dissatisfied therewith may within ninety days from such date of mailing file with the clerk of the district court a written objection thereto duly verified on oath." If no objection has been filed to a proposed determination, or if all objections have been resolved, the district court must enter judgment rendering the proposed determination the final adjudication of water rights for the given area. *Id.* § 73–4–12; *see also Plain City Irrigation Co. v. Hooper Irrigation Co.*, 87 Utah 545, 51 P.2d 1069, 1073 (1935) (noting that judgment should not be entered until all protests "have been disposed of and determined").

## II. THE GENERAL ADJUDICATION ADDRESSING THE LOWER GREEN RIVER AND PRICE RIVER DRAINAGE AREAS

¶ 8 The present appeal arises from a general adjudication that commenced nearly fifty years ago. While general adjudications take a significant amount of time to complete, this general adjudication, in particular, has frequently eddied within the stream of the adjudicative process. The adjudication began its course on March 20, 1956, when the general adjudication of water rights for the Lower Green River and the Price River was initiated via district court order. Pursuant to statute, the state engineer provided notice of the initiation of the general adjudication and prepared a hydrographic survey of the area. *See* Utah Code Ann. § 73–4–3. Additionally, the state engineer collected and analyzed all submitted water rights claims, including Water User's Claim 91–294, which was submitted by GRCC. After compiling and analyzing all of the relevant information, the state engineer prepared the Proposed Determination of Water Rights in the Price River and Lower Green River Drainage ("Proposed Determination"), which was published in six volumes. Book 5 of the Proposed Determination contains Water User's Claim 91–294, the GRCC claim at issue in the current case.

¶ 9 On December 15, 1972, Delbert Tidwell, the GRCC secretary, signed a document entitled "Notice Receipt and Waiver." This form indicates that Mr. Tidwell personally received copies of Book 5 and Book 6. The form also contains the following language immediately above the signature line, which echoes language appearing earlier in the form: "[T]he undersigned waives any further service in connection [with the Proposed Determination] and consents to the entry of a final decree in this cause unless a formal protest is made by the undersigned claimant to the above-entitled court within ninety (90) days from and after date hereof." In addition, the first page of each volume of the Proposed Determination contains a notice that states as follows:

> Pursuant to Section 73–4–11 U.C.A.1953, you are hereby notified that any claimant dissatisfied with said Proposed Determination must file with the Clerk of the above entitled Court a written objection thereto duly verified on oath within ninety (90) days from and after the date of service of this Proposed Determination upon you.

If service was proper and complete when Mr. Tidwell signed the "Notice Receipt and Waiver" form, the ninety-day time period within which objections were required to be filed began to run no later than December 16, 1972. However, GRCC failed to file an objection to the Proposed Determination until June 20, 1973, well beyond the objection period.

¶ 10 GRCC's 1973 objection sought an increase of the irrigation duty[2] utilized by the state engineer when determining water rights for the Green River area. GRCC subsequently filed three additional protests, including two filed on June 18, 1993. One of the June 18, 1993 filings sought a further increase of the irrigation duty. The other claimed that a water right owned by Green River City should be disallowed due to the city's forfeiture. GRCC's last filing occurred on October 14, 1999, at which time GRCC

---

**2.** "Irrigation duty" is the amount of water deemed necessary for beneficial irrigation in a given area. GRCC protested that the Proposed Determination established an insufficient irrigation duty for the Green River area. GRCC's apparent theory was that while the irrigation duty set in the Proposed Determination would be sufficient for the Price River area, the Green River area required additional water due to differences in climate and soil composition.

asserted that the Proposed Determination inaccurately determined that GRCC was entitled to a water flow of sixty cubic feet per second during the irrigation season. GRCC claimed that the correct amount should be eighty cubic feet per second.[3]

¶ 11 On November 2, 2000, the State Engineer filed a motion to dismiss GRCC's 1973 objection as untimely. A dismissal of the 1973 objection would, in effect, render GRCC's subsequent filings inoperative, as those filings were either amendments to the 1973 objection or untimely because they were new objections filed beyond the ninety-day objection period.

¶ 12 GRCC opposed the motion to dismiss, disputing the effectiveness of the service of the Proposed Determination and further relying on the defenses of laches, waiver, equal protection, uniform operation of laws, and default.[4] At the same time, GRCC requested, pursuant to Utah Code section 73–4–10, that the district court extend GRCC's time for filing objections. Section 73–4–10 provides that the "court shall have power to allow amendments to any petition, statement or pleading; to extend as provided in this title the time for filing any statement of claim; and to extend, upon due cause shown, the time for filing any other pleading, statement, report or protest." Alternatively, GRCC sought dismissal of the entire general adjudication on a failure-to-prosecute theory.

¶ 13 The district court denied the State Engineer's motion to dismiss GRCC's 1973 objection. The court's decision focused on the state engineer's failure to strictly comply with section 73–4–11's requirement that proposed determinations be served by regular mail. The court concluded that this perceived service failure granted it *"legal latitude"* and justified the imposition of an equitable remedy. Specifically, the district court

concluded that if "all objectors/claimants are to be treated fairly, then all claimants should have 90 days to present their objections under 73–4–11, and I believe that period should be computed using the date of the *last event,* either mailing certificate or waiver, which is on file herein which affects each area." Because the district court determined that the date of the "last event" in the GRCC area was June 4, 1974, the date on which a water claimant named Joseph Novak signed a "Notice Receipt and Waiver" form, the court concluded that GRCC's June 20, 1973 objection was filed within the ninety-day objection period. The district court then stated that it would treat GRCC's " 'supplemental filings' . . . as merely amendments and/or specifications to the original filing."

¶ 14 The district court's willingness to consider the initial GRCC objection timely, coupled with its decision to view GRCC's three subsequent objections as amendments to the first timely objection, made it unnecessary for the court to grant GRCC's motion for an extension of time. As a result, the district court denied that motion without reaching its merits.

¶ 15 On appeal, the State Engineer challenges the district court's interpretation of section 73–4–11, as well as the district court's decision to treat GRCC's post–1973 filings as amendments to GRCC's original objection. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## STANDARD OF REVIEW

¶ 16 This appeal requires a review of the district court's interpretation of various statutes contained in title 73 of the Utah Code. "The interpretation of a statute . . . presents a question of law. . . ." *Parks v. Utah Transit Auth.,* 2002 UT 55, ¶ 4, 53 P.3d

---

3. Because two of GRCC's subsequent filings appear to raise questions not implicated by the original 1973 objection, the parties dispute whether those filings should be treated as new and separate objections or as amendments to the original 1973 objection. In crafting its equitable remedy, the district court considered all three subsequent filings to be "amendments and/or specifications to the original filing."

4. On appeal, GRCC reasserts its position that, by waiting nearly twenty-seven years to file the motion to dismiss, the State Engineer is barred, either by laches or waiver, from seeking dismissal of the GRCC filings. Given the highly unusual nature of general adjudication proceedings and the fact that GRCC itself had an obligation and opportunity to litigate its objection during that twenty-seven-year period, we are not inclined to hold the State Engineer accountable for the long delay.

473. "A trial court's determination of the law is reviewed under a correctness standard; we afford no degree of deference to a trial judge's determination of the law." *United States Fuel Co. v. Huntington–Cleveland Irrigation Co.,* 2003 UT 49, ¶ 9, 79 P.3d 945. We recognize that a district "court is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and will not be overturned unless it abused its discretion." *Id.* (internal quotation omitted). However, "when the trial court has based [its] ruling upon a misunderstanding or misapplication of law," the reviewing court should correct the error and provide "proper adjudication under correct principles of law." *Ferris v. Jennings,* 595 P.2d 857, 859 (Utah 1979).

## ANALYSIS

¶ 17 The outcome of this appeal hinges on events that occurred in the early 1970s. Specifically, we are called upon to determine whether GRCC's June 20, 1973 objection to the Proposed Determination was filed within the ninety-day objection period imposed by section 73–4–11 of the Utah Code. However, before that question can be answered, we must first ascertain whether service of the Proposed Determination was proper and complete when Mr. Tidwell signed the "Notice Receipt and Waiver" form on December 15, 1972. Resolution of these issues requires an analysis of section 74–4–11 of the Utah Code.

■ ¶ 18 When interpreting a statute, this court's "paramount concern is to give effect to the legislative intent, manifested by the plain language of the statute. Unless a statute is ambiguous, we will not look beyond the plain language of the statute." *State v. Huntington–Cleveland Irrigation Co.,* 2002 UT 75, ¶ 13, 52 P.3d 1257 (citations omitted). We recognize that "[o]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation as indicated by the entire context and subject matter of the statute dealing with the subject." *Longley v. Leucadia Fin. Corp.,* 2000 UT 69, ¶ 19, 9 P.3d 762 (internal quotations omitted).

¶ 19 Section 73–4–11 of the Utah Code provides, in relevant part, as follows:

> After full consideration of the statements of claims, and of the surveys, records, and files, and after a personal examination of the river system or water source involved, if such examination is deemed necessary, the state engineer shall formulate a report and a proposed determination of all rights to the use of the water of such river system or water source, *and a copy of the same shall be mailed by regular mail to each claimant with notice that any claimant dissatisfied therewith may within ninety days from such date of mailing file with the clerk of the district court a written objection thereto* duly verified on oath.

(Emphasis added.) All relevant portions of the statute have remained unchanged since 1919, the year the statute was first enacted. *See* 1919 Utah Laws ch. 67 § 32.

■ ¶ 20 Under the plain language of section 73–4–11, each water claimant has ninety days from the date of the mailing of the proposed determination to file an objection. In this case, it is undisputed that the state engineer never mailed the Proposed Determination to GRCC. Despite this fact, the State Engineer contends that GRCC's ninety-day objection period began to run on December 15, 1972, the date GRCC's secretary, Mr. Tidwell, signed the "Notice Receipt and Waiver" form acknowledging personal service of the Proposed Determination. GRCC counters that the state engineer is foreclosed by section 73–4–11 from providing service in any manner other than by regular mail.[5] We address each of these contentions in turn.

5. GRCC also argues that, even if the state engineer is allowed to personally serve proposed determinations, the authenticity of the form bearing Mr. Tidwell's signature is still in doubt and does not prove that GRCC actually received a copy of the Proposed Determination. We disagree. The "Notice Receipt and Waiver" form satisfies the authentication requirement of Utah Rule of Evidence 901. *See* Utah R. Evid. 901(b)(8) (a document over twenty years of age satisfies the authentication requirements where the document (1) was found where it would likely be found, and (2) is in such a condition that no suspicion as to its authenticity is raised).

## I. SECTION 73–4–11 DOES NOT PRECLUDE PERSONAL SERVICE

¶ 21 Although this court has mentioned service methods under section 73–4–11 in the past,[6] we have never been directly presented with the question of whether that section allows service of proposed determinations only by regular mail. GRCC contends that the plain language of section 73–4–11 leaves the state engineer no service options other than mailing proposed determinations to claimants via regular mail. GRCC justifies this interpretation by arguing that the legislature required service by regular mail to "ensure[ ] that all claimants receive notice of the proposed determination at the same time."

¶ 22 The district court agreed with GRCC's interpretation, concluding that the service language in section 73–4–11 revealed an implied legislative mandate that service of proposed determinations be conducted contemporaneously. The district court reached its decision under the apparent belief that those claimants that received a proposed determination earlier would be disadvantaged, a disparity the legislature intended to avoid by requiring contemporaneous service. Under the district court's reasoning, a claimant that receives a proposed determination at a later time, either due to an unwillingness to pick up the proposed determination or a delay in mailing on the part of the state engineer, has the advantage of reviewing previously filed objections and may also have information unavailable to a claimant that received a proposed determination at an earlier time.

¶ 23 The State Engineer takes the position that section 73–4–11 contemplates individual objection periods for each claimant. In support of this contention, he points to the language of the statute itself, which refers to "each claimant" and "any claimant." According to the State Engineer, if the legislature desired to impose a simultaneous service requirement, it would have expressly stated that requirement in the language of the statute, presumably by referring to "all" claimants or by imposing an objection period that was clearly universal to all claimants. He concludes that, because the statute contemplates individualized objection periods, the legislature realized that claimants would receive service of proposed determinations at different times. As a result, the State Engineer asserts, the practice of providing personal service causes no mischief to the legislature's intent.

¶ 24 We conclude that the State Engineer's reading of the statute is correct and reveals shortcomings in the interpretation provided by the district court. First, the district court's interpretation does not adequately account for the presence of the words "each" and "any," which reveals an intent on the part of the legislature to consider each water claimant individually and also seems to contemplate individual objection periods for each claimant.

¶ 25 Second, the district court's interpretation does not explain why the legislature would adopt such tenuous language to ensure simultaneous service when it could have expressly required such service. If the legislature desired to place all claimants on equal footing as to the time of service and the running of the objection period, it could

GRCC has supplied no evidence creating a doubt that the document is anything other than what it purports to be. As a result, we reject any contention that the form in question was a forgery or otherwise fails to establish that GRCC actually received a copy of the Proposed Determination on December 15, 1972.

6. *See, e.g., United States Fuel Co. v. Huntington–Cleveland Irrigation Co.*, 2003 UT 49, ¶ 4, 79 P.3d 945 (noting that a water right claimant's agent "signed a receipt and consent form" when personally receiving a proposed determination); *In re Utah Lake*, 878 P.2d 1147, 1150 (Utah 1994)

("These sections [73–4–11 to –15] provide that after full consideration, the state engineer shall prepare a proposed determination of water rights and a copy of the proposed determination shall be mailed or hand-delivered to each claimant for review."); *In re San Rafael River Drainage Area*, 844 P.2d 287, 288, 290 (Utah 1992) (acknowledging that a water right claimant "personally went into the state engineer's office" to pick up a proposed determination and stating that the general practice is that a "copy of the proposed determination is either mailed or hand-delivered to each claimant for review").

have easily designated some action universal to all claimants as the triggering point of the ninety-day objection period. As we have stated, it is improper to "infer substantive terms into the text that are not already there. Rather, [statutory] interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed." *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994) (citing *Mountain States Tel. & Tel. Co. v. Pub. Serv. Comm'n*, 107 Utah 502, 155 P.2d 184, 185 (1945)); *see also Trittipo v. O'Brien*, 204 Ill.App.3d 662, 149 Ill. Dec. 505, 561 N.E.2d 1201, 1204–05 (1990) ("The statute should be interpreted on the basis of what was written, and courts should not search for any subtle or not readily apparent intention of the legislature."). The plain language of section 73–4–11 does not justify an inference that the legislature intended to require simultaneous or even near-simultaneous service. We decline the invitation to write such a requirement into the statute.

¶ 26 Third, beyond the lack of statutory language suggesting a requirement of simultaneity, there is no reason to believe that the absence of such a requirement results in prejudice to any claimant. The district court reasoned that allowing a different objection period for every claimant would cause prejudice due to potential information asymmetries and the fact that one claimant's objection period could potentially expire before that claimant has a chance to view other claimants' objections.

¶ 27 However, generally speaking, claimants should be immediately aware of any possible objection as soon as they see the proposed determination. Claimants are aware of the claims they have submitted to the state engineer. If a proposed determination does not match the contours of a submitted claim, the party who submitted that claim is on notice that an objection may be warranted.[7] It is difficult to see how actions taken by a subsequent claimant could cause a previously nonexistent objection to suddenly come into existence. Further, section 73–4–13 of the Utah Code requires that if any objection to a proposed determination is to be adjudicated, notice must be provided "to all claimants, stating when and where the matter will be heard." *See also Plain City Irrigation Co. v. Hooper Irrigation Co.*, 87 Utah 545, 51 P.2d 1069, 1072 (1935) (interpreting the predecessor of section 73–4–13 to require that notice be given only to those claimants whose rights would be affected or implicated in the question raised by the objection). As we explained in *Plain City*, the

> statute was designed to bring about expeditious and economical adjudication of water rights where a large number of users ... were involved. Whenever one's rights are or may be affected or drawn into question, the owner or claimant of such right is entitled to notice and has the right to be heard before he may be bound by a judgment affecting his rights.

*Id.* As a result, no meaningful prejudice can be caused by one claimant receiving a proposed determination earlier than other claimants. Should any objection be filed, all affected claimants will have their day in court.

¶ 28 The better-reasoned explanation for the language of section 73–4–11 is that the legislature realized that providing service to the vast number of claimants in a general adjudication would be difficult, and perhaps impossible, to accomplish in any type of simultaneous manner.[8] As a result of the difficulties presented by providing service to

---

7. Indeed, in this case, GRCC's final filing, on October 14, 1999, involved an alleged mistake that had been contained in the Proposed Determination since the time of its initial publication. GRCC should have been aware of the purported mistake for over twenty-five years prior to the time it finally lodged its objection.

8. As the State Engineer points out, at the time the Proposed Determination was being served on claimants, the state engineer's office did not have the benefit of computers. The only way to accomplish the mailing was by individually addressing each of the approximately 4,700 packets that section 73–4–11 required to be mailed. The difficulty of simultaneously mailing out such a large number of proposed determinations was substantial enough in the early 1970s and would have been even more difficult in 1919, the year that the service language was adopted. Consequently, it seems unlikely that the statute contemplated service through a single mass mailing or other near-simultaneous means.

such a vast number of claimants, section 73–4–11 provides that a claimant's objection period begins running on the date that the proposed determination is mailed to that claimant. Recognizing that a single mass mailing is impractical, the statute provides a mechanism by which the state engineer is not required to provide simultaneous service, but nevertheless gives all claimants the same amount of time to object to the proposed determination: ninety days from the time of the mailing to that claimant.

¶ 29 However, GRCC argues that, even absent a simultaneity requirement, our prior decisions demand strict adherence to statutory language. Consequently, GRCC contends that personal service cannot satisfy section 73–4–11 because personal service is not expressly listed as a service option. In support of this contention, GRCC cites *Longley v. Leucadia Financial Corp.*, 2000 UT 69, 9 P.3d 762, and *Mosby Irrigation Co. v. Criddle*, 11 Utah 2d 41, 354 P.2d 848 (1960). Both cases are readily distinguishable.

¶ 30 *Longley* involved a notice that simply failed to include all the information required by statute. 2000 UT 69 at ¶¶ 24–26, 9 P.3d 762. As a result, *Longley* is not analogous to the situation presently before us, where all required information was received by GRCC. *Mosby* is similarly unavailing. In *Mosby*, we held that service was proper when the state, in compliance with the relevant statute, provided notice via registered mail. 354 P.2d at 851. The defendants in *Mosby* argued that the statute required actual receipt of the notice, but we declined to infer such a requirement, stating instead that "the legislature, in providing for notice by registered mail, contemplated or hoped for actual receipt thereof, but it did not require it." *Id.* While *Mosby* concluded that the state's literal compliance with the statute satisfied the notification requirement, that opinion did not suggest that the state would somehow run afoul of the statute if it provided actual notice instead of utilizing registered mail.

¶ 31 In the present case, we can see no principled reason to conclude that personal service is insufficient to effectuate the purpose of section 73–4–11. In fact, personal service of proposed determinations is preferable in many ways to providing service via regular mail. Because section 73–4–11 designates that the ninety-day objection period begins to run on the date of mailing, personal service gives claimants the full ninety days to review the proposed determination and prepare any objections without losing days due to the regular mailing process. Further, personal service ensures that the proposed determination will reach the claimant, which may not be the case with regular mail due to unavoidable mishaps or mail-related problems. *See In re San Rafael River Drainage Area*, 844 P.2d 287, 290–91 (Utah 1992) (holding that service of proposed determination was sufficient even though it was mailed to the claimant's prior address).

¶ 32 For the foregoing reasons, we hold that section 73–4–11 allows the state engineer to provide claimants personal service of proposed determinations. Because GRCC was personally served with the Proposed Determination on December 15, 1972, its initial 1973 objection was filed well beyond the statutory ninety-day objection period.[9] However, as we discuss below, GRCC may be able to excuse its late filing if it is able to show due cause justifying its failure to file within that objection period.

## II. SECTION 73–4–10 ALLOWS THE DISTRICT COURT TO GRANT RETROACTIVE EXTENSIONS WHEN DUE CAUSE EXCUSES A LATE OBJECTION

¶ 33 GRCC maintains that, even if its initial objection was untimely, the district court may still grant a time extension to allow GRCC to re-file the objection. We agree and conclude that section 73–4–10 allows the district court to grant a retroactive

---

9. In light of this conclusion, it is unnecessary for us to address whether the district court properly designated GRCC's post–1973 filings as mere amendments to GRCC's initial objection. We do note, however, that we have some concerns about the appropriateness of the district court's summary conclusion on this matter. Utilizing an overly liberal amendment rule could serve to severely weaken the ability of section 73–4–11 to promote efficiency and finality in general adjudications.

extension to the ninety-day objection period so long as the claimant seeking an extension can show due cause justifying the objection's untimeliness.

### A. Retroactive Extensions Are Available Under Section 73–4–10

¶ 34 Section 73–4–10 states that the district court may "extend, upon due cause shown, the time for filing any other pleading, statement, report or protest." Nothing in the plain language of the statute suggests that the power to grant an extension applies only prospectively.

¶ 35 The State Engineer argues, however, that only prospective extensions can be granted because the district court's jurisdiction is limited to those objections that were filed within the ninety-day objection period. In essence, the State Engineer contends that if a claimant fails to file within ninety days of receiving the proposed determination, the court overseeing the general adjudication lacks jurisdiction to address any claim raised by that claimant, including a request for a time extension.

¶ 36 In support of this assertion, the State Engineer first points to sections 63–30d–401 and –402 of Utah's Governmental Immunity Act. Utah Code Ann. §§ 63–30d–401, –402 (Supp.2004). Those sections require a claimant to file a notice of claim with a governmental entity before an action against that entity or its employee may commence. *Id.* If a notice of claim is not filed within one year after the claim arises, a jurisdictional defect is created, precluding suit. *See Nielson v. Gurley,* 888 P.2d 130, 135 (Utah Ct.App.1994) ("Complying with the notice provisions of the Governmental Immunity Act is a *jurisdictional* requirement and a precondition to suit...."). The State Engineer next refers us to Utah Rule of Appellate Procedure 4, which requires a party seeking to appeal a final order to file a notice of appeal within thirty days after judgment is entered. Utah R.App. P. 4(a). Failure to do so deprives the court of jurisdiction. *See Glezos v. Frontier Invs.,* 896 P.2d 1230, 1232–34 (Utah Ct.App.

1995) (concluding that the court had no jurisdiction to hear a cross appeal due to an untimely notice of appeal). The State Engineer contends that the notice of claim and notice of appeal situations are both analogous to the extension mechanism found in title 73. The parallels he draws are inapposite. While it is true that sections 63–30d–401 and –402 and rule 4 impose a jurisdictional roadblock [10] in situations where a litigant fails to timely file a required pleading, no such jurisdictional roadblock exists in the general adjudication context.

¶ 37 The State Engineer cites *United States Fuel Co. v. Huntington–Cleveland Irrigation Co.,* 2003 UT 49, 79 P.3d 945, and *In re San Rafael River Drainage Area,* 844 P.2d 287 (Utah 1992), to support his jurisdictional argument. Neither case directly addresses the question presented in this appeal. In *United States Fuel,* we held that a district court *sitting outside the general adjudication* must refrain from exercising jurisdiction over a dispute between participants in the general adjudication when the outside claim is based on contentions made in an untimely objection filed in the general adjudication. 2003 UT 49 at ¶ 18, 79 P.3d 945. In fact, *United States Fuel* contains dicta that suggests the conclusion we reach today: "Unless and until [United States Fuel] sought and obtained leave of court *in the general adjudication* to excuse its tardy objection, [the defendant] was entitled to judgment perfecting the state engineer's proposed [determination]." *Id.* at ¶ 17 (emphasis added). We went on to state that "[t]o this day, [United States Fuel] has not sought to have its untimely objection accepted in the general adjudication." *Id.* at ¶ 18. Thus, in *United States Fuel* we held only that a court *outside* the general adjudication is denied jurisdiction over claims related to an untimely objection; we did not directly address whether the district court overseeing the general adjudication was denied jurisdiction and, in fact, implied that the general adjudication court would have jurisdiction.

---

10. We note that rule 4(e) provides a narrow exception that allows a court to retroactively extend the time for filing a notice of appeal if the would-be appellant can show "excusable neglect or good cause" justifying a retroactive extension. *See* Utah R.App. P. 4(e).

¶ 38 *In re San Rafael River* stands for a similar proposition. In that case, we concluded that an expedited hearing within a general adjudication could not be pursued when the claim was based on an untimely objection. 844 P.2d at 290–91. However, as in *United States Fuel,* there is no language in the opinion suggesting that the claimant was foreclosed from petitioning the district court for an extension of the objection time period.

¶ 39 Both the plain language of section 73–4–10 and our prior case law reveal that the district court overseeing the general adjudication may hear petitions for an extension of the ninety-day objection period at any time before a final judgment on the matter is entered. Consequently, GRCC may still petition the district court, even at this late date, for an extension to the objection time period. However, before the district court can grant such a request, GRCC must show due cause excusing its failure to file the objection within the ninety-day objection period.

### B. The Due Cause Standard

¶ 40 While we hold that water claimants may receive a retroactive extension of the objection period if due cause excuses a late filing, we have not previously had occasion to define the contours of the due cause standard imposed by section 73–4–10. Due cause, as used in other jurisdictions, is analogous to reasonable cause. *See, e.g., Key v. Chrysler Motors Corp.,* 1996–NMSC–038, ¶ 47, 918 P.2d 350 (noting that the due cause test "is one of objective reasonableness"); *In re Petition to Increase Millage Limit Levied on Real Estate from 25 Mills to 30 Mills,* 166 Pa.Cmwlth. 161, 646 A.2d 61, 65 n. 5 (1994) (considering due cause to be interchangeable with reasonable cause); *see also* Black's Law Dictionary 515 (7th ed.1999) (defining "due" as "just, proper, regular, and reasonable"). While, generally speaking, showing "reasonable cause" is not an extremely difficult burden to meet, we hold that the due cause analysis undertaken pursuant to section 73–4–10 is necessarily constrained by the nature of the general adjudication process itself. As we noted earlier, "[o]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject." *Longley v. Leucadia Fin. Corp.,* 2000 UT 69, ¶ 19, 9 P.3d 762 (internal quotations omitted).

¶ 41 One of the key goals of the general adjudication process is to remove doubts about the validity of water rights. *See Provo River Water Users' Ass'n v. Morgan,* 857 P.2d 927, 935 (Utah 1993) ("[T]he basic goal of general adjudication 'is to record all water claims from a particular source which subsequent appropriators can rely upon before making their investments.' " (quoting Robert W. Swenson, *A Primer of Utah Water Law: Part II,* 6 J. Energy L. & Pol'y 1, 29 (1985))); *see also* Utah Code Ann. § 73–4–11 (requiring the state engineer to administer water rights in accordance with the proposed determination—or previously decreed water rights—"until a final decree is rendered by the court"). Section 73–4–11 furthers the goal of certainty by reassuring water claimants that their rights are, in large part, immune from attacks by claimants that have allowed their ninety-day objection period to expire. We recognize, however, that the legislature saw fit to grant the district court the authority to extend that objection period if a party is able to show due cause justifying an extension, perhaps realizing that, at times, rigidity will unjustly deprive a party of an opportunity to have an objection heard. *Cf. State ex rel. M.M.,* 2003 UT 54, ¶ 10, 82 P.3d 1104 (recognizing that "there will arise circumstances when an inflexible application of the rule 4(a) deadlines would result in unconscionable injustices"). That being said, the existence of the time limitation contained in section 73–4–11, coupled with the laudable goal of certainty, reveals that the legislature did not intend section 73–4–10 to provide an escape hatch for water claimants that simply neglect to pursue their claims. Rather, section 73–4–10 arms the district court with the authority to grant a retroactive extension to the objection period only when a water claimant can show due cause justifying the objection's untimeliness. In order to give effect to the time limitation of section 73–4–11 and to appropriately serve the goal of establishing certainty, the stan-

dard imposed by section 73–4–10 must be strict.

¶ 42 Rule 4(e) of the Utah Rules of Appellate Procedure, which allows district courts to retroactively extend the time for filing a notice of appeal, provides a close analogy. Under that rule, when faced with a request for a retroactive extension, a district court only explores a party's failure to file a timely notice of appeal, giving no regard to events occurring after the date the appeal was required to be filed, with attendant circumstances guiding the court when determining what degree of scrutiny to apply to the request. *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 13, 2 P.3d 447 (stating that the appropriate level of scrutiny is dependent upon "the nature of the justification offered to support the motion").

 ¶ 43 We conclude that applying the standard utilized in rule 4(e) to extension requests made pursuant to section 73–4–10 will provide a solid framework for district courts while simultaneously providing an appropriate mechanism to balance the interests of certainty and justice. Therefore, we hold that, in order to satisfy section 73–4–10's due cause standard, a claimant seeking a retroactive extension must show excusable neglect or good cause excusing the late filing. Excusable neglect occurs, in this context, when an admittedly neglectful delay in filing is excused by special circumstances. *See Reisbeck*, 2000 UT 48 at ¶ 13, 2 P.3d 447; *see also Prowswood, Inc. v. Mountain Fuel Supply Co.*, 676 P.2d 952, 959 (Utah 1984), *overruled on other grounds as stated in State v. Johnson*, 700 P.2d 1125, 1129 n. 1 (Utah 1985) (noting the excusable neglect standard is strict and not meant to cover the typical excuse that a lawyer was simply too busy to comply with the filing deadline). Good cause occurs when special circumstances essentially beyond a party's control excuse the late filing and justify suspending a strict application of a filing deadline. *Reisbeck*, 2000 UT 48 at ¶ 13, 2 P.3d 447. Further, given the context in which retroactive extension requests pursuant to section 73–4–10 will arise, a reviewing court should confine its review to evidence explaining why the claimant failed to file an objection within the ninety-day objection period. Evidence of events occurring after the conclusion of the ninety-day objection period is irrelevant to a section 73–4–10 due cause analysis.

¶ 44 The standard outlined above pays appropriate deference both to the language of section 73–4–10, which grants the district court some discretion to extend the objection time period, as well as to the nature of the general adjudication process itself, which requires strict deadlines to promote certainty. Because the district court's resolution below made a due cause analysis unnecessary, a remand is required in order to determine if GRCC can show due cause excusing its late filing.

## CONCLUSION

¶ 45 We hold that the Proposed Determination was validly served, via personal service, on December 15, 1972. This conclusion makes it unnecessary for us to analyze whether the district court properly classified GRCC's post–1973 filings as "amendments." It also negates the legal foundation upon which the district court justified its imposition of an equitable remedy. As a result, we reverse the district court and remand to allow GRCC the opportunity to make a due cause showing that justifies its failure to file an objection to the Proposed Determination within the ninety-day objection period and for further proceedings consistent with this opinion.

¶ 46 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.