2008 UT 25

In the Matter of the GENERAL DETERMINATION OF RIGHTS TO the USE OF WATER, Both Surface and Underground, Within the Drainage Area of the Price River and of the Drainage Area of the Green River From the Confluence of the Price and Green Rivers to the Confluence of the Green and Colorado Rivers Excluding the Drainage Area of the San Rafael River in Utah.

Penta Creeks, LLC, and Magnificent Seven, LLC, Appellants,

v.

Jerry D. Olds, Utah State Engineer, Appellee.

No. 20060234.

Supreme Court of Utah.

March 21, 2008.

Denise A. Dragoo, Scott C. Rosevear, Salt Lake City, for appellants.

Mark L. Shurtleff, Att'y Gen., Norman K. Johnson, L. Ward Wagstaff, Mark H. Stratford, Asst. Att'ys Gen., Salt Lake City, for appellee.

NEHRING, Justice:

¶1 One measure of the importance of water to the people of Utah is the sizeable array of moving parts found within the legal machinery of our statutes for processing claims to water and for fairly allocating the water sought by claimants. In this appeal, we examine the operation of two of those statutory parts on the claims of two limited liability companies, Penta Creeks, LLC, and Magnificent Seven, LLC.[1]

¶2 The inner workings of water law contain a requirement that in the context of a general adjudication of water rights, those who protest a proposed allocation of water by the State Engineer "verify" their written objections.[2] Utah Code Ann. § 73-4-11(2)

---

1. Because both limited liability companies stand on equal footing with respect to all issues in this appeal, for convenience we will refer to them as Penta Creeks.

2. The parties have referred to the papers filed by Kaiser Steel challenging the State Engineer's First Proposed Determination of Water Rights as protests. Over time, the term protest has come to be used to describe any opposition to a proposed course of action in the realm of water law. Utah law, however, contemplates that the term protest be applied to challenges to applications to appropriate water. See Utah Code Ann. § 73-3-7 (Supp.2007). Challenges to a proposed determination by the State Engineer, like those

(Supp.2007). The State Engineer sought rejection of Penta Creeks' first objection to his Proposed Determination of Water Rights for the Price River and Lower Green River. The State Engineer argued that because the objection was merely signed by an attorney, it was inadequately verified. The district court agreed. We conclude that the district court correctly interpreted the law when it determined that verification requires something more than the signature of an attorney. We hold, however, that the district court erred when it declined to consider whether "due cause" existed to permit Penta Creeks to cure the defects in the objection filed by their predecessor in interest, Kaiser Steel. We therefore remand for consideration of Penta Creeks' eligibility for due cause relief.

¶ 3 We then turn our attention to discerning the meaning of that portion of Utah's water law that describes how and to whom notice must be given of determinations made by the State Engineer as part of the general adjudication process. Notice is important to the operation of Utah's water law because proper notice triggers the running of statutory time periods for filing objections or other responses to proposed determinations of the State Engineer. Penta Creeks claims that it was not provided statutorily mandated notice of the State Engineer's First Addendum to the Proposed Determination of Water Rights, which affected its allocation of water. Penta Creeks urges us to reverse the district court's determination that it was properly notified of the First Addendum of the Proposed Determination by the State Engineer. We hold that the procedure used by the State Engineer to notify water claimants of the First Addendum to the Proposed Determination did not conform to the statutory requirements. We therefore reverse the district court's holding that the notice was proper.

¶ 4 Finally, we examine Penta Creeks' request for a retroactive extension of the deadline for filing its objection to the First Addendum. Penta Creeks urges that even if the State Engineer sent the First Addendum to the address mandated by law, sufficient due cause is present to allow Penta Creeks to

filed by Kaiser Steel, are styled as objections.

have its objection deemed timely. The district court rejected Penta Creeks' application for due cause relief. We hold that the district court erred in applying an incorrect legal standard for addressing Penta Creeks' eligibility for due cause relief. We therefore remand for further proceedings consistent with this opinion.

## FACTS

¶ 5 While this appeal comes before us as a contest between two parties, the State Engineer and Penta Creeks, this skirmish is but a small constituent part of the omnibus general adjudication of rights to the water in the Price River and Lower Green River drainages. "The purpose of the general adjudication process is to prevent piecemeal litigation regarding water rights and to provide a permanent record of all such rights by decree." *Jensen v. Morgan*, 844 P.2d 287, 289 (Utah 1992). The general adjudication of water rights in the Price River and Lower Green River drainages has been ongoing for more than fifty years. The State Engineer first petitioned the district court for initiation of proceedings under Utah Code section 74–4–1 (1953) to obtain judicial determination of the relative rights to water in these drainages, including the water claimed by Penta Creeks' predecessors in interest, in 1956.

¶ 6 The State Engineer's original petition sought a legal determination of the water rights in the entire Uinta Basin and Lower Green River. When it became apparent that this scope was too great for one proceeding, the general adjudication was amended to limit its inquiry to the Price River and Lower Green River drainages.

¶ 7 In 1960, after the district court defined the scope of the present general adjudication, the State Engineer commenced the statutory process created to confer legitimacy on those claiming lawful ownership based on beneficial use of the public waters of Utah under our state's doctrine of prior appropriation. *See* Utah Code Ann. § 73–4–3 (Supp.2007). The State Engineer began notifying prospective water claimants of the pending lawsuit to adjudicate relative rights to the water and

*See id.* § 73–4–11.

invited them to file claims. *See id.* The method used by the State Engineer to identify and notify water claimants in the general adjudication proved to become, as the discussion to follow will reveal, a matter of some consequence in this appeal.

¶ 8 After the time for filing claims expired, the State Engineer reviewed the claims submitted by the claimants, conducted an investigation of the water resources in the relevant drainages, and in 1971, submitted a proposed determination allocating the water to the claimants. Mailing of the Proposed Determination to claimants continued through 1979. Water claimants were then given an opportunity to protest the State Engineer's Proposed Determination by filing a written objection "duly verified upon oath" within ninety days of the mailing of the Proposed Determination. *Id.* § 73–4–11. Kaiser Steel Corporation, Penta Creeks' predecessor in interest, was one of the claimants that was dissatisfied with the State Engineer's proposed allocation of water. Kaiser Steel, through its attorney, Edward Clyde, filed a timely objection in 1973.

¶ 9 Several decades passed before the State Engineer began to respond to objections filed by the water claimants. It was during this dormant period, in 1996, that Penta Creeks acquired the water rights that are the subject of the current dispute by purchasing them from an intervening owner in a bankruptcy proceeding.

¶ 10 Reinforcing our observation that the Lower Green River and Price River general adjudication proceeding "has frequently eddied within the stream of the adjudication process," *Green River Canal Co. v. Olds,* 2004 UT 106, ¶ 8, 110 P.3d 666, in 2000, some twenty-seven years after Kaiser Steel filed its objection, the Attorney General, acting on behalf of the State Engineer, filed an answer to the Kaiser Steel objection. The State Engineer's answer was served on Penta Creeks' counsel, Ralph C. Petty, at his office address.

¶ 11 In April 2003, the State Engineer's Office mailed a copy of its First Addendum to the Proposed Determination to Penta Creeks at "136 S. Main, Suite 1000, Salt Lake City, UT 84101." At that time, Ralph C. Petty remained the registered agent for service of process for Penta Creeks. Mr. Petty's address was not 136 S. Main. That address was, however, the address affixed to the quitclaim deed under the instruction, "When recorded return to: . . .," which Penta Creeks obtained from the bankruptcy trustee.

¶ 12 Sometime after the First Addendum to the State Engineer's Proposed Determination was mailed, Penta Creeks changed counsel. In May 2005, new counsel for Penta Creeks received a letter from the Attorney General's Office regarding the original Kaiser Steel objection to the State Engineer's Proposed ·Determination. The letter contained proposed stipulations to some of the issues raised in the original Kaiser Steel objection, which the assistant attorney general assigned to the case had previously discussed with Penta Creeks' counsel. The letter was accompanied by a copy of the First Addendum, which Penta Creeks saw for the first time. Soon thereafter, Penta Creeks filed an objection to the First Addendum to the Proposed Determination that supplemented the Kaiser Steel objection.

¶ 13 The State Engineer moved to dismiss both the Kaiser Steel objection to the State Engineer's Proposed Determination and Penta Creeks' supplemental objection to the First Addendum to the Proposed Determination. The district court granted the State Engineer's motion, and Penta Creeks appealed.

## STANDARD OF REVIEW

■ ¶ 14 Though it did not discuss the issue in its Order, the district court impliedly ruled that the Kaiser Steel objection was ineffective because it was not properly verified. We review this legal determination for correctness.

■ ¶ 15 The district court also grounded its dismissal of Penta Creeks' objection to the First Addendum on an interpretation of law. It concluded that the State Engineer's service of the addendum by mail to the address noted on the water rights deed was lawful and that Penta Creeks' objection was

untimely. We also review this element of the district court's ruling nondeferentially.

¶ 16 Finally, without explaining its ruling, the district court decided that Penta Creeks had not shown sufficient "due cause" to justify extending the time, as permitted by Utah Code section 73–4–10, for Penta Creeks to cure defects in the Kaiser Steel objection or to file its objection to the First Addendum. A court's application of the due cause standard turns on its evaluation of facts that explain, justify, or mitigate the defaulting party's tardiness. As a result, we would typically extend deferential review to a court's judgment about due cause. In this case, however, we are left with scant evidence of how the district court reached its conclusion that Penta Creeks failed to establish due cause. While we are comfortable with granting deference to factual findings of a district court, we are less eager to simply defer to a ruling that contains no declaration of the legal test used to reach the result. In this setting, we do not hesitate to state the legal test the district court should have applied and require it to do so on remand.

## ANALYSIS

### I. THE KAISER STEEL OBJECTION DID NOT COMPLY WITH THE REQUIREMENT THAT OBJECTIONS BE "DULY VERIFIED ON OATH"

¶ 17 We conclude that the signature of the Kaiser Steel attorney did not, standing unaided as it was by any attestation to the truth of the statements made in the objections or any acknowledgment confirming the identity of the attorney, satisfy the requirement that objections to a proposed determination be "duly verified on oath." Utah Code Ann. § 73–4–5 (1989).

¶ 18 Were the signature at issue that of any person other than an attorney, there would be little upon which to erect a claim that the statutory verification requirement had been met. "Duly verified on oath" must mean something to distinguish the signature affixed to the objection from a mere autograph. In fact, we held that in order for there to be a valid verification "(1) there must be a correct written oath or affirmation,

and (2) it must be signed by the affiant in the presence of a notary or other person authorized to take oaths, and (3) the latter must affix a proper jurat." *Mickelsen v. Craigco, Inc.*, 767 P.2d 561, 564 (Utah 1989) (interpreting the Utah Code section 38–1–7 (1974) requirement that a mechanic's lien "must be verified by the oath of [the claimant]"). Verification on oath is distinguished from a mere notarization in that verification requires that "the applicant swears to the truthfulness of the representations made in the application." *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 31, 9 P.3d 762 (Howe, C.J., concurring).

¶ 19 The requirement of verification contemplates the presence of visible evidence that the person submitting the objection appreciated that its contents were to be prepared with the utmost rectitude. According to Penta Creeks, the mere autograph of Kaiser Steel's attorney, Edward Clyde, was itself the equivalent of "duly verified on oath."

¶ 20 In support of this assertion, Penta Creeks points to rule 11 of the Utah Rules of Civil Procedure. Pursuant to rule 11, an attorney's signature on a paper filed with a court is a substitute for a verification or an affidavit. This is not always so, however. The version of rule 11 in place when Mr. Clyde signed the Kaiser Steel objection endorsed the sufficiency of an attorney's signature "[e]xcept when otherwise specifically provided by rule." Utah R. Civ. P. 11 (1953). Although the current text of the rule has added the term "statute" to the list of exceptions to the rule that an attorney's signature alone carries with it a sufficient representation of rectitude, *see* Utah R. Civ. P. 11 (2007), we do not interpret this addition to mean that in 1973 the signature of an attorney was sufficient to comply with an express statutory mandate for verification upon oath. To do otherwise would require us to conclude that the enactment of the version of rule 11 in force when the Kaiser Steel objection was filed repealed all statutes requiring verification, including the "duly verified upon oath" provision of section 73–4–11. This we decline to do. We hold, therefore, that the Kaiser Steel objection was not duly verified upon oath.

¶ 21 The district court did not discuss the legal sufficiency of the Kaiser Steel objection in its Order. A finding that the signature of the Kaiser Steel objection by Mr. Clyde was insufficient to constitute verification was, however, something that Penta Creeks had considered. In its memorandum in opposition to the State Engineer's motion to dismiss, Penta Creeks requested an extension of time to refile the Kaiser Steel objection in properly verified form under Utah Code section 73–4–10 in the event that the court found the objection lacked verification. Despite this request, the district court did not indicate why inadequate due cause was present to permit Penta Creeks to cure defects in the objection. On appeal to this court, Penta Creeks maintains its position that under Utah Code section 73–4–10, it should be granted an extension of time to file a verified version of the Kaiser Steel objection.

¶ 22 The State Engineer goes to some lengths to make the case that the importance of accuracy in the contents of papers filed by claimants is so great that it justifies both the requirement that the formalities of document verification be observed and that the sanction for inadequate verification be severe. The stridency with which the State Engineer presses the merits of this cause is betrayed, however, by the remarkably haphazard and apparently selective manner in which the State Engineer has chosen to enforce the verification requirement. Within the general adjudication of the Price and Lower Green rivers drainages, the State Engineer has not challenged objections on section 73–4–11 grounds in which an extensive variety of "verifications" appear. These range from unnotarized signatures of persons who are not lawyers, to notarized signatures unaccompanied by any attestation to the truth of the contents of the document, to averments that the contents were true to "the best of the [signer's] knowledge."

¶ 23 Although the State Engineer's selective enforcement of the verification requirement was not argued below by Penta Creeks, our review of the method employed by the State Engineer to select which of those among the voluminous claimant filings those he elects to challenge for alleged technical defects leaves us incapable of conjuring a rational explanation for them. We are, however, left with considerable skepticism for the sincerity of the State Engineer's assertions that properly verified documents are essential to the integrity of the adjudication process.

¶ 24 The gap between the extreme solemnity afforded to document formality in the State Engineer's arguments before this court and the more modest degree of concern for formality displayed by the actual practice of the State Engineer suggests to us that the opportunity to cure technical defects under section 73–4–10 should be more easily accessed than the State Engineer would prefer.

## II. THE STATE ENGINEER'S USE OF AN ADDRESS LIST NOT AUTHORIZED BY STATUTE FOR MAILING THE FIRST ADDENDUM TO THE PROPOSED DETERMINATION DID NOT CONSTITUTE PROPER NOTICE

¶ 25 The district court found that the State Engineer had discharged his duty to serve a copy of the First Addendum to the Proposed Determination on Penta Creeks by mailing it to the address noted on the quitclaim deed. It reasoned that the address that would have assured actual notice to Penta Creeks, the address to which the Attorney General's Office mailed the State Engineer's answer to the Kaiser Steel objection, was not reasonably accessible to the State Engineer and that the burden fell to Penta Creeks to notify the State Engineer's Office of any change of address. Since the State Engineer properly mailed the addendum three years before Penta Creeks filed its supplemental objection, the objection was too late and, in the view of the district court, no due cause existed that would justify extending the time to file it.

¶ 26 While the contest raged over whether the State Engineer should have sent the addendum to the address on the quitclaim deed or the address used by the Attorney General's Office, little attention was given to what appears to us to be a fundamental question: Did there exist an authoritative roster of addresses which, if used, would

conclusively establish legally sufficient notice? As it happens, there is such a list. Section 73–4–3(2) describes it this way:

(d) After the expiration of 90 days [from the date the State Engineer completes publishing notices to claimants to file their claims], the state engineer shall prepare a list that shall include the names and addresses of all claimants then of record in the state engineer's office and all claimants who have notified the state engineer of their addresses, and this list shall be certified by the state engineer as complete and filed with the clerk of the court.

(e) The court upon petition may by order permit the addition of names and addresses to this list at any time during the pendency of the action, and the clerk of the court may, without court order, upon notice from the claimant note any change of address.

(f) If any claimant appears in this action by an attorney, the clerk shall note on the list the address of the attorney.

Utah Code Ann. § 73–4–3(2)(d)–(f) (Supp. 2007).[3] There is, then, one list of names and addresses that the legislature has, by statute, declared to be definitive.

¶ 27 As described in section 73–4–3, the contents of the initial list are assembled by the State Engineer, certified by him to be complete, and filed with the clerk of the district court. The contents of the list may be supplemented in several ways. Section 73–4–3 requires the clerk of the court to add names and addresses pursuant to court order and when an attorney enters an appearance, and it also authorizes the clerk to supplement the list to include a change of address presented by a claimant. The contents of the list may also be supplemented by the State Engineer at any time during the pendency of a general adjudication "whenever the names and addresses of [claimants] come to the attention of the state engineer." Id. § 73–4–22 (1989). While this statutory language suggests a passive role for the State Engineer in discovering the identity of previously unknown claimants, later provisions of section 73–4–22 impose the duty upon him to "diligently search for the names and addresses of any claimants ... who have not been previously served with summons other than by publication" immediately after the completion of his proposed determination. Id. The State Engineer must then attest to the district court by affidavit that he has exhausted his search. Id.

¶ 28 Despite the clear statutory assignment of authoritative status on the name and address list maintained by the clerk of the court, at no time in the proceedings leading to this appeal did any party indicate what, if any, address for Penta Creeks' claims appeared on the list of addresses on file with the clerk of the court. The district court's order granting the State Engineer's motion to dismiss reflected the parties' subordination of the court's roster of claimant addresses when it noted "that it is the burden of the protestant/water user to notify the State Engineer's Office of any change in mailing addresses and/or provide for the forwarding of mail from any former address." The district court's assignment to water claimants of the burden to update their identifying data finds clear support in section 73–4–3. By contrast, the district court's designation of the State Engineer as the recipient of identifying data conflicts with the statutory directive that changes to the certified list of claimants on file with the clerk of the court be made by the clerk and not by the State Engineer.

¶ 29 Thus, the State Engineer is both accurate and misleading when he exhorts us to affirm the district court's ruling that "service of a proposed determination or addendum is effective when mailed to the address of record." We might well heed this call but for the fact that the parties have not disclosed to us the address of record, the one that appears, or does not appear as the case may be, in the list maintained by the clerk of Seventh District Court.

¶ 30 We approach warily what appears to us to be the omission of the vital, obvious, and readily accessible fact that a definitive list of the names and addresses should, if the

**3.** The version of this statute in effect when the First Addendum was mailed, Utah Code Ann. § 73–4–3 (1989), is nearly identical to the current version. In the applicable subsections, the revision added only subsection numbers and some modernization of language.

State Engineer and the clerk of the court have performed their duties under section 73–4–3, be in the possession of the clerk of the court. The obviousness of this statutory mandate to us inevitably causes us to search for reasons why it is not obvious to others. Our curiosity is particularly acute when the State Engineer himself downplays the significance of the district court list, treating it as a secondary source of information.

¶ 31 While the State Engineer is a strident advocate for the imperatives of legal formalism in the realm of objection verification, he undergoes an abrupt conversion to pragmatism when the topic turns to the interpretation and enforcement of notice requirements. When it comes to selecting the list of addresses to use for sending a first addendum to water claimants, the State Engineer lists several practical considerations that justify his practice of supplanting the clerk of the court's claimant list with his own. He points out that the State Engineer is the repository for a broad range of filings related to water, most of them bearing address information. Recent statutory amendments, he adds, directed at facilitating the update of water right ownership records require water right conveyances to be filed with the State Engineer. *See* Utah Code Ann. § 73–1–10(3) (Supp.2007). Additionally, the State Engineer stated to the district court that

> [t]he common practice is not for any claimant to ever update their address with the court.... [T]hey only do it with the State Engineer. And then because the State Engineer has a correct address, ... then people get as good a notice as they're [going to] get, ... because people just honestly don't come into the court and give [them] the new address.

His statements indicate that claimants seldom notify the clerk of the court of changes of address as required by the procedure set out in section 73–4–3. We accept each of these claims to be true. That the address identification practices of the State Engineer may be more efficient and even more effective than those established by law does not confer legal legitimacy on them. Only the legislature can transform the *de facto* into the *de jure*.

¶ 32 Both before the district court and before us, the State Engineer insisted that Penta Creeks failed in its obligation to provide the State Engineer with its correct address and that it was, moreover, responsible for the State Engineer's acquisition of an incorrect address because the deed containing the incorrect address was transmitted by the county recorder to the Division of Water Rights.[4] It appears to us that both the assertion that a water claimant failed to provide an updated address to the State Engineer and the assertion that a claimant provided an inaccurate address underscore the wisdom of the legislature's decision to designate one address roster, the one maintained by the clerk of the court, to be authoritative. We therefore reverse the district court's ruling that the address used by the State Engineer to mail the First Addendum to the Proposed Determination to Penta Creeks was lawful and remand for a determination of whether the State Engineer's notice to Penta Creeks was proper when compared against the statutorily mandated list maintained by the clerk of the court.

## III. DUE CAUSE MAY PERMIT REVISION AND LATE FILING OF THE KAISER STEEL OBJECTION AND LATE FILING OF THE OBJECTION TO THE FIRST ADDENDUM

¶ 33 The district court also turned away Penta Creeks' application to be granted, pursuant to Utah Code section 73–4–10, retroactive extensions of time to file both the Kaiser Steel objection with a proper verification and its objection to the First Addendum.

¶ 34 By enacting section 73–4–10, the legislature empowered the district court to spare a water claimant who would otherwise be caught up in the complex procedural gears of a general adjudication lawsuit. The court's authority to grant an extension of the time

---

4. In his briefs, the State Engineer refers to the Division of Water Rights as the entity that serves as the repository for data relevant to water rights. The Division is under the jurisdiction of the State Engineer, and we find that the distinction between the two is of no importance in this case.

for filing pleadings is limited by the requirement that the claimant demonstrate "due cause." Utah Code Ann. § 73-4-10 (1989). We have recently provided operational guidance to district courts called upon to apply the "due cause" standard of section 73-4-10. *See Green River Canal Co. v. Olds*, 2004 UT 106, ¶ 43, 110 P.3d 666. Our search for a workable due cause standard was guided by the need to balance the objective of general adjudication actions to bring certainty to the allocation of our state's water resources with fairness in the administration of rules created to produce that certainty and finality. *Id.* ¶ 41.

¶ 35 In *Green River*, we discovered in rule 4(e) of our Rules of Appellate Procedure, the rule governing extensions of time to file appeals, a workable standard that could be transferred to the task before us. Rule 4(e) grants a court discretion to extend the time for filing a notice of appeal when a late filing is the product of excusable neglect or when good cause is present. *Green River*, 2004 UT 106, ¶ 43, 110 P.3d 666. We interpreted good cause to be a "special circumstance" that was beyond the party's control. *Id.*

¶ 36 Although both parties relied on *Green River's* due cause standard in their briefs to the district court, the district court failed to apply *Green River's* test for due cause to the Kaiser Steel objection or the objection to the First Addendum, nor did the district court explain how it came to conclude that Penta Creeks' circumstances did not qualify as due cause. We would typically cede a substantial measure of deference to a district court's ruling on an application for relief under section 73-4-10. This is because the assessment of whether due cause exists is one that is bound up in the facts of a particular case. We are compelled to withhold that deference here because the district court failed to state what standard it used for determining due cause and articulated no analysis of which facts it used to support its finding that there was no due cause. Moreover, it is clear to us that unchallenged facts in the record suggest that Penta Creeks may well merit section 73-4-10 relief.

¶ 37 Among these facts is the apparent lax adherence of claimants to section 73-4-11's verification requirement. Although section 73-4-11 clearly states that verification of objections is required, the portion of the general adjudication record provided to this court demonstrates that most claimants did not swear to the accuracy of their objections. In 1973, the year the Kaiser Steel objection was filed, it may well have been the practice of water rights claimants and water rights attorneys to take a relaxed approach to the verification requirement, much like it appears to currently be the practice of the State Engineer to take a dismissive view of the section 73-4-3 requirement that the clerk of the court maintain the list of claimants in the general adjudication. Additionally, the record indicates that when the State Engineer began responding to objections in 2000, he did not consistently seek to enforce the verification requirement.

¶ 38 Standing out most prominently in the record is the fact that the Office of the Attorney General, serving in its capacity as counsel for the State Engineer, obtained and used the correct name and address of Penta Creeks' attorney when it filed an answer to the Kaiser Steel objection on the State Engineer's behalf. The extent of the State Engineer's account of his attorney's acquisition of the information is contained in his statement in his brief that the Attorney General's Office "evidently discovered and used the address of Penta Creeks' registered agent."

¶ 39 In the State Engineer's view, there was no need to elaborate on the circumstances under which his attorney came upon accurate notification information for Penta Creeks because the attorney's knowledge was irrelevant to the issue of proper notice. The State Engineer's position, one that persuaded the district court, was that for the purpose of satisfying his statutory duty to provide notice to water claimants, his field of vision need not stray beyond the names and addresses in his records.

¶ 40 Whatever one might think about the merits of the State Engineer's argument that he was under no obligation to retrieve from his attorneys the address used to mail the Answer, it is a legal argument that has little, if anything at all, to do with the implications of Penta Creeks' receipt of the Answer on

"due cause." The State Engineer, together with the district court, merged the two issues. In their view, once the State Engineer's mailing of the First Addendum to the incorrect address was found to be lawful, Penta Creeks' claim to "due cause" evaporated. Penta Creeks merely joined the list of hundreds of claimants who failed to provide updated addresses to the State Engineer. The names and addresses of these claimants appear in an attachment to the State Engineer's "Affidavit of Undeliverable Proposed Determination's First Addendum." The employee of the State Engineer's Office who signed the affidavit stated that she sent copies of the First Addendum "to each claimant to their last known address on file with the State Engineer's office." Of course, this statement serves as further confirmation that the mailing addresses used by the State Engineer were drawn from an unauthorized list, but more notably, it is very likely that Penta Creeks is unique among these claimants in having received documents from attorneys for the State Engineer mailed to an accurate, working address. This circumstance renders highly suspect the State Engineer's contention that Penta Creeks was duty bound to formally update its address even though the Answer had been properly addressed to and received by Penta Creeks' attorney.

¶ 41 There are few among us who, having received official correspondence from the attorney for a state agency, would harbor a belief that the agency did not have a secure grasp on our address and would not be capable of using that address in the future. Even if before the official correspondence arrived one came to suspect that the agency did not have a current address on file, the receipt of the correspondence would almost certainly put those fears to rest. A person who, despite having received official correspondence from a state agency, felt compelled to confirm that the address actually used by the agency was the same address found on the roster of addresses used by the agency for its official mailings would at the least be considered, using the most generous of diagnoses, excessively prudent.

¶ 42 The assessment of whether Penta Creeks' untimely response to the First Addendum should be excused for due cause required the district court to move beyond ascertaining the locus of legal responsibilities to account for how the circumstances influenced the reasonable assumptions and behavior of the parties. On remand, if the district court is called upon to revisit Penta Creeks' applications for relief under section 73–4–10, it must take on this task in the context of applying the *Green River* standard for due cause.

### CONCLUSION

¶ 43 We hold that signature of the Kaiser Steel objection by an attorney did not constitute proper verification of the objection and uphold the district court. We also hold that the State Engineer's failure to use the statutorily mandated list of claimants maintained by the clerk of the court when mailing the First Addendum was unlawful and reverse the district court's holding that it was proper. We remand for a determination of whether the State Engineer's notice to Penta Creeks of the First Addendum was proper when compared against the list kept by the clerk of the court. Finally, we hold that the proper test for determining whether due cause merits a retroactive extension of the filing deadline under section 73–4–10 is whether excusable neglect or good cause warrants doing so. Accordingly, we remand to the district court for findings of whether excusable neglect or good cause merit retroactive extensions of the deadlines for filing a properly verified version of the Kaiser Steel objection or for filing the objection to the First Addendum.

¶ 44 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.