**2018 UT App 109**

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE GENERAL DETERMINATION OF THE RIGHTS TO
THE USE OF ALL THE WATER, BOTH SURFACE AND UNDERGROUND,
WITHIN THE DRAINAGE AREA OF UTAH LAKE AND JORDAN RIVER IN
UTAH, SALT LAKE, DAVIS, SUMMIT, WASATCH, SANPETE AND JUAB
COUNTIES, IN UTAH.

UTAH STATE ENGINEER, PROVO RIVER WATER USERS ASSOCIATION,
METROPOLITAN WATER DISTRICT OF SALT LAKE & SANDY, UTAH
LAKE DISTRIBUTING COMPANY, CENTRAL UTAH WATER
CONSERVANCY DISTRICT, AND UNITED STATES OF AMERICA,
Appellees,
*v.*
EVAN JOHNSON,
Appellant.

Opinion
No. 20160547-CA
Filed June 14, 2018

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 360057298

Cole S. Cannon and Jared C. Clark,
Attorneys for Appellant

Sean D. Reyes, Sarah M. Shechter, Benjamin J. Jensen,
Margaret C. Osswald, and Norman K. Johnson,
Attorneys for Appellee Utah State Engineer

Shawn E. Draney, Scott H. Martin, and Danica N.
Cepernich, Attorneys for Appellees Provo River
Water Users Association, Metropolitan Water
District of Salt Lake & Sandy, and Utah Lake
Distributing Company

Steven E. Clyde, Edwin C. Barnes, Aaron D. Lebenta,
and Emily E. Lewis, Attorneys for Appellee Central
Utah Water Conservancy District

John C. Cruden, Nicholas A. Dimascio, Jeannette F.
Swent, and Katherine W. Hazard, Attorneys for
Appellee United States of America

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1     Evan Johnson appeals the district court's grant of summary judgment to the Utah State Engineer (Engineer), whereby the court dismissed Johnson's objection to Engineer's Amendment to the Proposed Determination (the Amendment) for the Goshen Valley Subdivision and affirmed the Amendment. We affirm.

BACKGROUND

¶2     This case involves adjudication of water rights within the drainage area of Utah Lake and Jordan River. In 1981, Johnson's predecessor in interest, the East Warm Creek Irrigation and Canal Company (the Company), filed a statement of water user's claim (the Original Claim) in the Utah Lake and Jordan River adjudication. The Company claimed right to 4.96 cubic feet per second of water from Warm Springs to irrigate 407.5 acres of land and water 250 livestock units based on a priority date before 1900. In 1985, Engineer prepared and filed with the district court a Proposed Determination for the Goshen Valley Subdivision, of which the Original Claim was a part. No party—including the Company or Johnson—filed an objection to the Proposed Determination.

¶3    In 1999, nearly fourteen years later, the Company filed a diligence claim (the Diligence Claim) with Engineer in which it claimed water rights from Warm Springs to irrigate an additional 64.6 acres of land. In its explanatory remarks, the Company represented that the "owner for this diligence claim is the same as the original diligence claim," referring to the Original Claim filed in 1981. It also explained that "[t]he original claim only accounted for 407.5 acres and the company wants to apply for the 64.6 acres that were left off and have always been used by [the Company]." Approximately two weeks after filing the Diligence Claim, the Company transferred a fifty percent interest in the Diligence Claim to Johnson.

¶4    In October 2000, and after conducting some on-site evaluation of the Diligence Claim, Engineer filed with the district court the Amendment, which recommended to the court that the Diligence Claim be disallowed. Johnson objected to the Amendment. After many years of discovery and negotiations between Johnson and Engineer—which included a failed stipulation between the two as to the Diligence Claim—Engineer in 2016 moved for summary judgment on Johnson's objection. Engineer characterized the Diligence Claim as "an attempt to claim additional acreage that the Company failed to include" in the Original Claim. Engineer argued that the Diligence Claim was barred by Utah Code section 73-4-9 due to the Company's failure to timely file a claim for the water identified therein. Engineer also asserted that the Diligence Claim could not be used to modify the Proposed Determination, "because the only proper mechanism for correcting or modifying a proposed determination is through filing an objection [to it] with the district court," which neither Johnson nor the Company filed.

¶5    Johnson opposed the summary judgment motion, arguing that it was improper for Engineer to amend the Proposed Determination regarding "property and water rights not previously included in the Determination without giving an affected party sufficient opportunity to be heard." He contended

that due process required that he have an opportunity to be heard regarding the water rights he asserted in the Diligence Claim. He also asserted a laches defense, contending that the parties who had objected to the Diligence Claim had waited fifteen years to pursue their objections and that he was prejudiced by the delay. He contended that the evidence establishing the Diligence Claim faded and became harder to obtain, and that during the delay he had also relied on the rights he asserted in the Diligence Claim. And he argued that the objecting parties' failure to pursue remedies constituted a fatal failure to prosecute.

¶6    The district court granted summary judgment in favor of Engineer. The court made four determinations. First, the court concluded that the Diligence Claim was "untimely and that the water right had already been addressed in the original Proposed Determination." In particular, the court determined that the Diligence Claim was "an expansion of the water rights claimed in [the Original Claim]," and the court concluded that the Company was "forever barred and estopped" under section 73-4-9 from asserting the Diligence Claim, that the Company "forfeited" the Diligence Claim water, and that "the 2000 Amendment properly disallowed" the claim. (Internal quotation marks omitted.)

¶7    Second, the court determined that the 2000 Amendment "did not revive Mr. Johnson's right to assert a claim for additional water in the Goshen Valley adjudication or to challenge the original Proposed Determination." Rather, the court noted that the "only way" to challenge the Proposed Determination was through filing an objection under section 73-4-11, and it concluded that the "time to file an objection to the original Proposed Determination passed in 1985." As a result, the court concluded that Johnson could not "rely on the 2000 Amendment to revive any right to assert a claim for water in the

general adjudication or object to the State Engineer's recommendations in the original Proposed Determination."[1]

¶8    Third, the court concluded that the Company and Johnson "were afforded the process due to them" under the general adjudication statutes. The court determined that the Company "was afforded sufficient due process in connection with the original Proposed Determination in the 1980s," and that Johnson, as the Company's successor in interest, was "not entitled to any more rights than the Company had, and thus is bound by the timeframes for filing a water user's claim and an objection that apply to the Company."

¶9    Fourth, the court was "not persuaded" by Johnson's laches argument. The court explained that "[n]ot only did Mr. Johnson have both the opportunity and responsibility to pursue his own objection, he did not demonstrate that he would suffer any injury or prejudice in his ability to support his objection."

¶10    The court therefore granted Engineer's motion for summary judgment, dismissed Johnson's objection, and affirmed the Amendment. Johnson appeals that order.

ISSUES AND STANDARDS OF REVIEW

¶11    Johnson makes several arguments on appeal. First, he argues that the district court incorrectly interpreted and applied the general adjudication statutes to bar the Diligence Claim, and that thereby he has been improperly denied his due process rights. He also argues that the district court incorrectly determined that laches and/or failure to prosecute did not bar

---

1. The court additionally noted that Johnson had "not requested an extension of time to file an objection to the original Proposed Determination" under Utah Code section 73-4-10.

Engineer from opposing the Diligence Claim or third parties from continuing to assert their objections to the Diligence Claim.

¶12    Johnson's arguments of error all flow from the district court's summary judgment decision. "We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Likewise, we review a district court's interpretation and application of a statute for correctness." *Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC*, 2018 UT App 31, ¶ 9 (quotation simplified), *petition for cert. filed*, Mar. 26, 2018 (No. 20180228).

ANALYSIS

¶13    Johnson argues that the district court erred by dismissing his objection and affirming the Amendment on summary judgment. He contends that the Diligence Claim is not statutorily barred, as the district court concluded. Rather, he argues that he is entitled to the opportunity to perfect his Diligence Claim and that the Amendment filed by Engineer improperly and prematurely denied him that opportunity. As support for his argument, he makes several contentions.

¶14    He contends that diligence claims are different in kind from other water claims and that they may be made at any time, regardless of whether an action for a general adjudication of water rights is ongoing. He also contends that the Amendment effectively revived his opportunity to challenge the Proposed Determination and that due process requires that he now have the opportunity to prove his claim. Relatedly, he also argues that the district court's decision that the doctrines of laches and/or failure to prosecute did not apply was incorrect.

¶15   We begin by describing the statutory landscape involving diligence claims and the general adjudication process. We then address Johnson's arguments.

## I. Diligence Claims and General Adjudication

¶16   In Utah, rights to the use of water may be established through two methods: the statutory appropriation application process, as described in Utah Code sections 73-3-1 to -31, or diligence claims, as described in Utah Code section 73-5-13. *See East Jordan Irrigation Co. v. Morgan*, 860 P.2d 310, 312–13 (Utah 1993); *Eskelsen v. Town of Perry*, 819 P.2d 770, 771 n.1 (Utah 1991).

¶17   At issue in this case are diligence claims. "A diligence claim is a claim to a water right established by putting water to beneficial use prior to March 12, 1903, when the statutes creating the mandatory appropriation application process went into effect." *Provo River Water Users' Ass'n v. Morgan*, 857 P.2d 927, 929 n.4 (Utah 1993). Once a diligence claim is filed, the state engineer will "conduct a field investigation of each claim filed" and "prepare a report" of that investigation. Utah Code Ann. § 73-5-13(5)(a) (LexisNexis Supp. 2013). While the state engineer acts only "in an administrative capacity" by "administering and supervising the appropriation of the waters of the state" and the district court has the duty to adjudicate the claims, *see Jensen v. Jones*, 2011 UT 67, ¶¶ 10–11, 270 P.3d 425 (quotation simplified), the state engineer's diligence claim report becomes part of the claim file and may be "admissible in any . . . judicial proceeding on the validity of the claim," Utah Code Ann. § 73-5-13(5)(b).

¶18   One type of judicial proceeding used to determine the validity of water claims is a general adjudication, which is employed to resolve "all competing claims to water use in [a particular] area." *Green River Canal Co. v. Olds*, 2004 UT 106, ¶ 4, 110 P.3d 666. *See generally* Utah Code Ann. §§ 73-4-1 to -24

(Michie 1989) (providing for and prescribing the general adjudication process).[2] "The purpose of the general adjudication process is to prevent piecemeal litigation regarding water rights and to provide a permanent record of all such rights by decree." *Olds*, 2004 UT 106, ¶ 5 (quotation simplified); *see also Green River Adjudication v. United States*, 404 P.2d 251, 252 (Utah 1965) ("The objective of an adjudication . . . is to determine and settle water rights which have not been adjudicated or which may be uncertain or in dispute."). In this regard, "the basic goal of general adjudication is to record all water claims from a particular source which subsequent appropriators can rely upon before making their investments." *Provo River*, 857 P.2d at 935 (quotation simplified); *see also Olds*, 2004 UT 106, ¶ 41 ("One of the key goals of the general adjudication process is to remove doubts about the validity of water rights.").

¶19    The process for asserting and adjudicating water rights through a general adjudication is established by Title 73, Chapter 4 of the Utah Code. *See* Utah Code Ann. §§ 73-4-1 to -24 (Michie 1989). Once a general adjudication is initiated, the state engineer must first notify all known water rights holders and also publish notification of the adjudication. *Id.* § 73-4-4. Claimants then have

---

2. As Engineer notes in his briefing, many of the relevant general adjudication provisions in sections 73-4-1 to -24 were left unrevised between 1979 and the latter part of the first decade of 2000. For example, section 73-4-9 remained the same between 1979 and 2009, when it was then amended. *Compare* Utah Code Ann. § 73-4-9 (Michie 1989), *with id.* (LexisNexis Supp. 2009). We rely on the pre-amended provisions that were in effect during the relevant proceedings in the 1980s in this decision, unless otherwise noted. Apart from Johnson's attempt to rely on a 2013 amendment in the diligence claim statute as persuasive authority, the amendments do not substantively affect the issues or the arguments.

ninety days from the date of notice to file with the district court a statement of claim for water rights of the water source being adjudicated. *Id.* § 73-4-5. If a claimant fails to timely file its claim, the claimant "shall be forever barred and estopped from subsequently asserting any rights, and shall be held to have forfeited all rights to the use of the water theretofore claimed by him." *Id.* § 73-4-9.

¶20    After the water claims have been filed, the state engineer evaluates all of the submitted claims. *Id.* § 73-4-3. After a "full consideration of the statements of claims, and of the surveys, records, and files," the engineer will prepare and file with the district court a proposed determination of the water rights for that area, which includes the engineer's recommendation to the court for the establishment of the water rights in the area. *Id.* § 73-4-11. A copy of the proposed determination is mailed to each claimant, along with a notice that any claimant dissatisfied with the proposal may file a written objection within ninety days. *Id.* If no objection is filed by the close of the objection period, the district court must enter "judgment in accordance with such proposed determination," *id.* § 73-4-12, "rendering the proposed determination the final adjudication of water rights for the given area," *Olds*, 2004 UT 106, ¶ 7; *see also United States Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶ 15, 79 P.3d 945; *Jensen v. Morgan*, 844 P.2d 287, 290 (Utah 1992).

¶21    At that point, a claimant who has failed to timely object under section 73-4-11 essentially takes on the role of a defaulting party and is bound by its failure under section 73-4-12, unless and until the claimant seeks leave from the court overseeing the general adjudication to file an untimely objection under section 73-4-10. *See* Utah Code Ann. § 73-4-10; *see also Olds*, 2004 UT 106, ¶¶ 39, 41–44 (explaining that section 73-4-10 permits the district court overseeing the general adjudication to "hear petitions for an extension of the ninety-day objection period at any time before a final judgment on the matter is entered" upon a showing of due cause, and describing the required "due cause"

showing as "strict" in order to "give effect to the time limitation of section 73-4-11 and to appropriately serve the goal of establishing certainty" as to general adjudications); *United States Fuel*, 2003 UT 49, ¶¶ 15–20 (explaining the interplay between sections 73-4-10, 73-4-11, and 73-4-12, and stating that when a party fails to timely object to a proposed determination, it takes on "the status of a defaulting party in the general adjudication").

## II. The Diligence Claim and the Summary Judgment Ruling

¶22    Johnson's argument—that the Diligence Claim is not barred and that he is entitled to an opportunity to prove his claim on its merits—requires us to interpret and apply the relevant statutes. "When interpreting a statute, this court's paramount concern is to give effect to the legislative intent, manifested by the plain language of the statute." *Green River Canal Co. v. Olds*, 2004 UT 106, ¶ 18, 110 P.3d 666 (quotation simplified). We will "not look beyond the plain language of the statute" if the statute is unambiguous. *State v. Huntington-Cleveland Irrigation Co.*, 2002 UT 75, ¶ 13, 52 P.3d 1257. In this regard, "we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning," and we presume "that the expression of one term should be interpreted as the exclusion of another" and "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Aequitas Enters., LLC v. Interstate Inv. Group, LLC*, 2011 UT 82, ¶ 15, 267 P.3d 923 (quotation simplified). We also "read the plain language of a statute as a whole and interpret its provisions in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 32, 203 P.3d 943.

¶23    As we explain below, we conclude that the district court correctly interpreted and applied the plain language of the relevant general adjudication statutes to bar the Diligence Claim. Despite Johnson's contentions to the contrary, the language of

the relevant statutes plainly forecloses Johnson's arguments. As the Company's successor in interest, Johnson's water rights do not exceed that of the Company, *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 27, 98 P.3d 1, and he is likewise bound by the Company's actions in the general adjudication, *see Penta Creeks, LLC v. Olds*, 2008 UT 25, ¶¶ 2, 33–37, 43, 182 P.3d 362. And here, it is undisputed that the Company failed to include the water represented by the Diligence Claim in the Original Claim and that the Company thereafter failed to object to the Proposed Determination when provided with notice and the opportunity to do so. These failures are fatal to Johnson's attempt to make the Diligence Claim now.

A.      The Statutory Bar Under Section 73-4-9

¶24     The plain language of the general adjudication statutes demonstrates that diligence rights, like all other water rights, must be claimed according to the established general adjudication procedures once a general adjudication for a particular water area is initiated. Indeed, section 73-4-3 provides that once a general adjudication action for a water area has been filed with the district court, that filing sets in motion the general adjudication procedures in sections 73-4-1 to -24. *See* Utah Code Ann. § 73-4-3 (Michie 1989); *see also United States Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶ 16, 79 P.3d 945 (providing that "[t]he entry of this order for a general adjudication" for "all water rights within" the water area identified "set[s] in motion [the] procedures" outlined in the general adjudication statutes, including "giving notice to water claimants, the filing of statements by claimants, and a comprehensive and exhaustive investigation by the state engineer").

¶25     These procedures include the requirement that "all claimants" in the water area must, after receiving notice of the requirement to do so, timely "file a written statement with the

clerk of the court setting forth his respective claim to the use of such water." Utah Code Ann. §§ 73-4-3, 73-4-5 (Michie 1989) (providing that "[e]*ach person* claiming a right to use *any water* of such river system or water source shall, within ninety days after the completed service of the notice . . . , file in the office of the clerk of the district court a statement in writing" detailing the claimed water use (emphasis added)). Thus, per the plain language, and without exception, *every* claimant to water rights in the area being adjudicated must timely file a statement of claim, one that details the exact extent of the claimant's water use. There is no language suggesting that a claimant whose water rights are based on pre-1903 beneficial use is excused or excepted from these requirements. *See Green River Adjudication v. United States*, 404 P.2d 251, 252 (Utah 1965) (noting that "it is essential that *everyone* whose rights are involved or may be affected be made parties to the [general adjudication] proceeding" and that "they be required to assert whatever rights they contend they are entitled to" (emphasis added)).

¶26 The plain language of section 73-4-9, the time-bar section, also makes no exception for diligence claimants (or any other claimants, for that matter). That section provides in broad and mandatory language that "*any* person" who fails to "make and deliver such statement of claim to the clerk of the court within the time prescribed by law shall be forever barred and estopped from subsequently asserting *any* rights, and shall be held to have forfeited *all rights* to the use of the water theretofore claimed by him." Utah Code Ann. § 73-4-9 (Michie 1989) (emphasis added). And no language in section 73-5-13, the diligence claim statute, otherwise abrogates or avoids this consequence.

¶27 Here, because the specific water area at issue became subject to a general adjudication nearly forty years ago, the Company was required, once it received notice, to timely file a statement of claim for the extent of the water it claimed it had a right to use from the water source. *Id.* §§ 73-4-3, 73-4-5, 73-4-9. But the Original Claim did not include the diligence rights the

Company attempted to claim in 1999, despite the fact that the Company and Johnson both acknowledged that those rights should have been included in the Original Claim.

¶28    And the plain language of the general adjudication statutes mandates a clear consequence for the Company's failure to timely include the additional water described in the Diligence Claim: the Company became "forever barred and estopped from" thereafter claiming it. *Id.* § 73-4-9. This bar is in line with general adjudication's overall purpose of providing certainty for water users in a particular area. *See, e.g., Green River Adjudication*, 404 P.2d at 252; *see also Green River Canal Co. v. Olds*, 2004 UT 106, ¶ 18, 110 P.3d 666. As the Company's successor in interest, this bar necessarily extends to Johnson.[3] *See Penta Creeks, LLC v. Olds*, 2008 UT 25, ¶¶ 2, 33–37, 43, 182 P.3d 362.

¶29    Johnson's arguments to the contrary are unpersuasive, given the statutory language.[4] Indeed, the case Johnson

---

3. We therefore reject Johnson's contention that, because the Diligence Claim was corrective, the water represented by the Diligence Claim was implicit in the Original Claim and was not an unclaimed right. No language in either the diligence claim statute or the general adjudication statutes suggests that allegedly corrective claims are an exception to the statutory bar when they are untimely filed in a general adjudication or that it is procedurally proper to untimely assert a corrective claim through the filing of a new diligence claim outside of the general adjudication proceedings already underway. Rather, the plain language of both sections 73-4-5 and 73-4-9 require a claimant to describe and claim the full extent of his water rights within the time frame required and in the general adjudication proceedings or suffer the consequence for failing to do so.

4. Johnson also argues that a 2013 amendment to the diligence claim statute, section 73-5-13, *see* Utah Code Ann. § 73-5-13(7)

(continued…)

---

primarily relies upon to argue that diligence claims are an exception to general adjudication and the statutory bar, *Bauer v. Prestwich*, 578 P.2d 1283 (Utah 1978), is inapposite. As Engineer notes, *Bauer* involved the defendants' application to appropriate water that was already claimed by the plaintiffs under a diligence claim. *See id.* at 1284–85. *Bauer* did not involve a general adjudication or any application of the general adjudication statutes to an untimely-filed diligence claim. *See id.* It therefore is not instructive to the case at hand.

B.     Failure to Object to the Proposed Determination

¶30   The Company's failure to make any objection to the Proposed Determination—which apparently failed to describe the full extent of the Company's rights due to its failure to include them in the Original Claim—is also fatal to Johnson's claims on appeal. Had the Proposed Determination misstated the Company's water rights, the Company could have objected pursuant to section 73-4-11. *See* Utah Code Ann. § 73-4-11 (Michie 1989) (providing that a claimant "dissatisfied" with the proposed determination "may" file an objection within ninety

---

(…continued)
(LexisNexis Supp. 2013), as well as the state engineers' historical practice, which he contends has included accepting untimely diligence claims in areas subject to general adjudication, support his argument that we should interpret the diligence claim statute as exempting diligence claims from the reach of the general adjudication statutes. But here, we have concluded that the plain language of the relevant statutory provisions bars the Diligence Claim and, moreover, does not support Johnson's suggested interpretation. Thus, we have no need for "other interpretive tools" to aid us, such as subsequent legislative history or the state engineers' historical practice, and "our task of statutory construction is [therefore] at an end." *See Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (quotation simplified).

days from the date the proposed determination was mailed); *see also Olds*, 2004 UT 106, ¶ 27 & n.7 ("Claimants are aware of the claims they have submitted to the state engineer. If a proposed determination does not match the contours of a submitted claim, the party who submitted that claim is on notice that an objection may be warranted."). But if a claimant fails to make a timely objection to a proposed determination, the plain and mandatory language of section 73-4-12 assigns a clear consequence for that failure upon expiration of the objection period: the district court becomes bound to enter judgment in accordance with the rights as described in the Proposed Determination. *See* Utah Code Ann. § 73-4-12 (Michie 1989) ("If no contest on the part of any claimant shall have been filed, the court shall render a judgment in accordance with such proposed determination, which shall determine and establish the rights of the several claimants to the use of the water of said river system or water source . . . ."). No language in the diligence claim statute, section 73-5-13, alters this result.

¶31     Likewise, this result cannot be collaterally challenged through a separate proceeding, such as the filing of a separate diligence action for rights to water that, at all relevant times, was part of the water source already being adjudicated. *See United States Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶¶ 15–20, 79 P.3d 945. The Utah Supreme Court's reasoning in *United States Fuel* makes that clear. In that case, an irrigation company filed a diligence claim in a general adjudication, and United States Fuel (USF) objected to the proposed determination one day after the statutory ninety-day deadline. *Id.* ¶¶ 3–4. In the objection, USF asserted that it held a senior right to the water claimed by the irrigation company. *Id.* ¶ 4. USF then filed a separate action to quiet title to the water rights claimed by the irrigation company. *Id.* ¶ 5.

¶32     The irrigation company moved to dismiss the separate action or stay the proceedings, pending the outcome of the general adjudication, and it also moved to bar any objections to

the validity of its diligence claim where USF filed an untimely objection. *Id.* ¶¶ 6–7. The district court denied both motions. *Id.* Instead, the district court determined that it had jurisdiction over the dispute and ultimately concluded that the evidence demonstrated that USF, not the irrigation company, held priority to the water. *Id.* ¶ 8.

¶33 On appeal, the supreme court reversed, holding that USF's failure to timely object was fatal to its attempt to have its water right adjudicated in a separate action. *Id.* ¶ 21. The court explained that filing the objection one day late "had consequences," specifically that where no timely objections to the proposed determination were filed, the district court overseeing the general adjudication became required under the "clear mandate" of section 73-4-12 to "enter judgment consistent with [the] uncontested elements of [the] proposed determination." *Id.* ¶¶ 12, 15, 17 (explaining that the "clear mandate of section 73-4-12 is that courts must render judgment in accordance with a proposed determination where the proposed determination is uncontested at the close of the ninety-day statutory period").

¶34 The supreme court explained that by failing to timely object, USF "took on the status of a defaulting party in the general adjudication," rendering USF unable to defeat the irrigation company's "right to obtain judgment" in accordance with the proposed determination through "collateral attack in a separate lawsuit." *Id.* ¶ 20. Rather, the supreme court stated that "it is the obligation of a trial court confronted with a private suit seeking relief inconsistent with an uncontested proposed determination in a general adjudication to abstain from adjudicating the private claims." *Id.* ¶ 18. In so doing, the court noted that USF did have a potential remedy in the general adjudication: it could seek leave from the court overseeing the general adjudication "to excuse its tardy objection," but explained that "[u]nless and until" USF sought and obtained leave, the court in the general adjudication was required to enter

judgment "perfecting [the irrigation company's] claim." *Id.* ¶¶ 17–18.

¶35   While the jurisdictional question presented by *United States Fuel* is not at issue in the present case, Johnson, like USF, has effectively sought to collaterally challenge the water rights described and established by the Proposed Determination through the untimely filed Diligence Claim. But, as explained above (and by the Company's own admission), the water rights represented by the Diligence Claim formed part of the water source and the associated rights being adjudicated in the general adjudication. Given the procedural stage of the general adjudication and the failure of any party to timely object to the Proposed Determination, the district court was required at the close of the statutory objection period to enter judgment in accordance with the water rights described therein. *See United States Fuel*, 2003 UT 49, ¶¶ 15–20. That result cannot now be collaterally challenged by the filing of a separate diligence claim. Rather, as explained in *United States Fuel*, the rights described in the Proposed Determination are now immune from attack absent leave from the court overseeing the general adjudication to lodge an untimely objection to the Proposed Determination. *See id.*

¶36   Further, the Amendment, and Johnson's objections to the Amendment, did not open the door to an untimely challenge of the Proposed Determination. The Amendment was a proposed resolution of only the Diligence Claim, which represented water rights that perhaps could have been included in the Proposed Determination but, because the Company did not timely assert them, were not. The Amendment did not propose any revision to the Proposed Determination and instead allowed it to remain untouched.

¶37   In this way, while it was filed as an inclusion to the general adjudication, it is an amendment to the Proposed Determination only insofar as it acts to further insulate the Proposed Determination from collateral attack. Thus, regardless

of how the Amendment is characterized (housekeeping measure or otherwise) or the path that Engineer took to file it, the Amendment recommended a discrete and statutorily mandated resolution of a diligence claim that improperly sought to disturb the water rights established by the unopposed Proposed Determination. On this basis, Johnson's objections to the Amendment therefore could only be objections to the Amendment and the recommendation itself, not to the Proposed Determination.[5] *See, e.g.*, *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶¶ 22–23, 98 P.3d 1.

C.     Due Process

¶38     We also conclude that Johnson's due process rights related to the Diligence Claim have not been violated. "At a minimum, the right to due process requires that those with an interest in a proceeding be given notice and an opportunity to be heard in a meaningful manner before their interests are adjudicated by a court." *Salt Lake Legal Defender Ass'n v. Atherton*, 2011 UT 58, ¶ 2, 267 P.3d 227; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

¶39     Our supreme court has long held that the notice provisions of the general adjudication statutes meet the requirements of due process. *See Eden Irrigation Co. v. District*

---

5. We are also unpersuaded by Johnson's contention that the Amendment represented an improper adjudication by Engineer. It did not. The Amendment was exactly what it purported to be—a *recommendation* to the district court overseeing the general adjudication that the claim be disallowed.

*Court of Weber County*, 211 P. 957, 959 (Utah 1922). Johnson is the successor in interest to the Company, and it is without dispute that the Company participated in and received the process it was due under the relevant general adjudication provisions during the 1980s proceedings. *See Penta Creeks, LLC v. Olds*, 2008 UT 25, ¶¶ 2, 17–19, 33–37, 182 P.3d 362 (considering the effect of the predecessor's actions, such as failure to properly file an objection, on the successor's interest in general adjudication). Through the Company, Johnson therefore received the process he would have been due in the general adjudication, including the process afforded the Company to both claim the full extent of its water rights under section 73-4-5 and to timely object to the Proposed Determination under section 73-4-11. *See id.* Johnson is not entitled to more process to try to prove on its merits an improperly filed challenge to the Proposed Determination that, at this stage in the proceedings, is statutorily barred by the general adjudication statutes.

¶40    Furthermore, the case Johnson primarily relies on to make this argument, *Provo River Water Users' Ass'n v. Morgan*, 857 P.2d 927 (Utah 1993), is inapposite. There, Utah Supreme Court concluded that the decree in that case resolving the general adjudication was not intended to adjudicate the rights of users to the water sources—isolated springs—at issue. *Id.* at 933. And, in dicta, the court noted that even if the decree were intended to adjudicate the rights associated with the isolated springs at issue, it was unclear that the users of the isolated springs' water received the process and notice they were due of the adjudication and of their duty to assert their rights in it, particularly in light of a shift in law mid-proceedings. *Id.* at 933–34.

¶41    Here, in contrast, the water represented by the Diligence Claim had allegedly been used by the Company since before 1903 and apparently was part and parcel of the Original Claim. Thus, the Company should have been aware that that water formed part of its water rights in the area that became subject to

general adjudication. *See generally Green River Canal Co. v. Olds*, 2004 UT 106, ¶ 27 & n.7, 110 P.3d 666. And there is no question that the Company was notified of the general adjudication and of its duty to "assert [its water] rights" in that proceeding "or lose them," *Provo River Water*, 857 P.2d at 934. There is also no question that the Company received the Proposed Determination and the required notice that it had ninety days to object, which it did not do. And although Johnson attempts to argue that applying the statutory bars to diligence claims represents a shift in law (like the shift in law at play in *Provo River*, which affected the notice given to the isolated springs' users), he has not demonstrated that this is so in light of the plain statutory language and the precedent we have discussed. As a result, *Provo River* does not assist Johnson in making his case.

¶42     Accordingly, we also affirm the district court's conclusion that Johnson has received all the process he is due as related to the water rights represented in the Diligence Claim.[6]

---

6. Johnson does not appear to argue that he did not receive due opportunity to object to the Amendment itself. Rather, we understand his argument to be that due process requires that he now be allowed to challenge the Proposed Determination, particularly in light of the Amendment, which he characterizes as itself a challenge to the Proposed Determination. We have rejected that argument above. But to the extent that Johnson might be arguing that he did not receive the process he was due as related solely to the Amendment, we reject any such contention as well. Johnson received notice of the Amendment, which included notice that he had ninety days in which to object, and he did object. Further, the court heard and resolved his objection. This is sufficient for purposes of due process in these circumstances. *See Eden Irrigation Co. v. District Court of Weber County*, 211 P. 957, 959 (Utah 1922).

¶43    In sum, the Company failed to timely claim the water represented by the Diligence Claim and thereafter timely object to the Proposed Determination. *See* Utah Code Ann. §§ 73-4-3, 73-4-5, 73-4-9, 73-4-11, 73-4-12 (Michie 1989). Johnson is bound by those failures. The Company and Johnson have also failed to avail themselves of the proper procedural vehicle—a requested extension under section 73-4-10—to try to remedy the failure to include in the Original Claim the water represented by the Diligence Claim or to object to the Proposed Determination. *See id.* § 73-4-10. Further, the Company and Johnson, as its successor, have received the process they are due, given that the Diligence Claim represents an improper collateral challenge to the Proposed Determination and that the Company received all the process it was due in relation to the Proposed Determination. And the Amendment, or the proceedings associated with the Amendment, did not revive a right to challenge the Proposed Determination. Thus, under the plain language of the statutes in question, as well as precedent interpreting those statutes, we affirm the district court's determination that the Diligence Claim was barred.

### III. Laches Defense and/or Failure to Prosecute

¶44    Finally, Johnson argues that the district court erred when it determined that laches and failure to prosecute did not apply in these circumstances.

¶45    "Laches is designed to shelter a prejudiced defendant from the difficulties of litigating meritorious claims after an unexplained delay." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 37, 289 P.3d 502. "It is a negative equitable remedy which deprives one of some right or remedy to which he would otherwise be entitled, because his delay in seeking it has operated to the prejudice of another." *Id.* (quotation simplified). "Laches has two elements: (1) lack of diligence on the part of the claimant and (2) an injury to the

defendant because of the lack of diligence." *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 731 (Utah 1990).

¶46    We agree with the district court's determination that the laches defense does not apply. For one thing, our supreme court has rejected a similar argument in *Green River Canal Co. v. Olds*, 2004 UT 106, 110 P.3d 666, and we are persuaded by the reasoning employed by the court there. In *Olds*, a canal company asserted that the state engineer was barred from seeking dismissal of its filings because the engineer waited nearly twenty-seven years to file the motion to dismiss. *Id.* ¶ 12 n.4. The Utah Supreme Court rejected the canal company's assertion, concluding that, "[g]iven the highly unusual nature of general adjudication proceedings and the fact that [the canal company] itself had an obligation and opportunity to litigate its objection during that twenty-seven-year period, [the court was] not inclined to hold the State Engineer accountable for the long delay." *Id.*

¶47    Likewise, here, Johnson has not demonstrated why the district court erred in determining that laches did not apply, given the unusual nature of general adjudication proceedings, Johnson's obligation and opportunity to litigate the Diligence Claim and the Amendment, and the various circumstances in play, such as the lengthy negotiation proceedings between Johnson and Engineer and the failed stipulation. *See id.*

¶48    Similarly, Johnson has failed to demonstrate error in the district court's determination that he has not demonstrated prejudice. In particular, Johnson has not shown that it was error for the district court to discern no prejudice from the disappearance of evidence to prove a claim the court determined Johnson was barred from making under statute, a determination we have affirmed above. And Johnson has not otherwise demonstrated that his reliance on his alleged diligence rights ought to have persuaded the court to reach a different conclusion.

¶49    Johnson also has failed to demonstrate that the third parties objecting to the Diligence Claim ought to be barred from asserting their objections by a failure to diligently prosecute them. He contends that the objecting parties did not pursue remedies on their objections for over fifteen years, and cites a provision of the Utah Code—section 73-3-15—which he claims supports his assertion that the objections can be dismissed for failure to prosecute diligently. But section 73-3-15 addresses dismissal for failure to prosecute an *informal* adjudicative proceeding, which the present case was not, and he does not explain how this provision nonetheless applies. Moreover, other than citing general cases for the basic proposition that a party must diligently prosecute its claims, Johnson does not explain how a failure-to-prosecute theory ought to apply in these circumstances, given the nature of general adjudication proceedings or the circumstances particular to this case. *Cf. Olds*, 2004 UT 106, ¶ 12 n.4.

¶50    Accordingly, we affirm the district court's conclusion that the doctrines of laches and/or failure to prosecute do not apply under the circumstances present here.

## CONCLUSION

¶51    For the reasons stated above, we affirm the district court's grant of summary judgment on Johnson's objection.

—————